UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL TREATMENT )
OF ANIMALS, INC., )
1536 16th Street, N.W. )
Washington, D.C. 20036, )
)
DELCIANNA J. WINDERS, )
1557 Massachusetts Ave. )
Lewis 437 )
Cambridge, MA 02138, )
)
PHYSICIANS COMMITTEE FOR )          Civil Action No.
RESPONSIBLE MEDICINE, )
5100 Wisconsin Avenue, NW, Suite 400, )
Washington, D.C. 20016, )
)
BORN FREE USA, )
2300 Wisconsin Ave., N.W., Suite 100B )
Washington, D.C. 20007, )
)
MASSACHUSETTS SOCIETY FOR THE )
PREVENTION OF CRUELTY TO ANIMALS, )
350 South Huntington Ave. )
Boston, MA 02130, )
)
BEAGLE FREEDOM PROJECT, )
4804 Laurel Canyon Blvd. )
Valley Village, CA 91607, )
)
                    Plaintiffs, )
v. )
)
UNITED STATES DEPARTMENT OF )
AGRICULTURE )
1400 Independence Ave., S.W. )
Washington, D.C. 20250, )
)
ANIMAL AND PLANT HEALTH )
INSPECTION SERVICE )
4700 River Road )
Riverdale, MD 20737 )
                    Defendants. )
_____)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, as amended, to compel the United States Department of Agriculture ("USDA") to publicly

disclose thousands of records that the agency for years posted on the website of its Animal and

Plant Health Inspection Service ("APHIS") pursuant to FOIA's 1996 electronic records

requirements, *id.* § 552(a)(2), but which it recently removed from its website, and to proactively

disclose all similar records in the future. These records—inspection reports, research facility

annual reports, regulatory correspondence, enforcement records, and lists of entities licensed

under the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131–2159—have been routinely posted

for many years by the USDA pursuant to FOIA's affirmative disclosure requirements, 5 U.S.C. §

552(a)(2). Such records are heavily relied on by Plaintiffs as well as other animal protection

groups, research advocacy organizations, reporters, state and local governments, and others to

monitor and keep the public informed about the USDA's implementation and enforcement (and

lack thereof) of the AWA. Congress enacted the AWA decades ago "to insure that animals

intended for use in research facilities or for exhibition purposes or for use as pets are provided

humane care and treatment." 7 U.S.C. § 2131(1). Plaintiffs and others have also relied on such

records to advocate for protection of animals used in research, exhibition, and the pet trade, and

to petition the USDA to more diligently enforce the AWA, to promulgate standards for animal

protection, and to formulate and institute policies and practices that will advance the protection

of animals.

2.      The USDA's decision to withdraw these previously posted records severely

hinders Plaintiffs' ability to carry out these activities, and to keep the public informed about

these matters and whether and to what extent the USDA is carrying out its responsibilities under

the AWA and the agency's own implementing regulations.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. § 1331.

## PARTIES

4.      Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") is a Virginia

non-stock corporation and an animal protection charity pursuant to Section 501(c)(3) of the

Internal Revenue Code. It has relied heavily for many years on the records now eliminated from

the APHIS's website to carry out its mission to protect animals from cruel and neglectful

treatment, and plans to continue to rely on such information in the future for such purposes.

PETA's charitable animal protection and advocacy work is injured by Defendants' actions. That

injury will be redressed if it prevails in this action and the records at issue are immediately and

prospectively disclosed to the organization without requiring it to submit individual requests for

such information pursuant to FOIA.

5.      Plaintiff Delcianna Winders is an attorney and currently the academic Animal

Law & Policy Fellow at Harvard Law School. (Ms. Winders' institutional affiliation and title are

provided for identification purposes only. The position and views expressed herein do not

purport to present Harvard Law School's position and views, if any.) In that capacity, her

primary responsibilities include conducting research on, writing and teaching about, and

disseminating information to the public and the media about, the Animal Welfare Act,

compliance and non-compliance with that statute, and the USDA's implementation and

enforcement of the AWA and the agency's implementing regulations. Ms. Winders relied

extensively on the records that the USDA previously routinely made electronically available on

APHIS's website, but which the agency has now removed from that website. She intends to

continue researching and writing about the AWA now and in the future as part of her

professional career and personal interest, and to continue to rely on such records. For the last

eighteen months, Ms. Winders has been researching and drafting two law review articles

concerning the USDA's implementation of the AWA—articles that rely heavily on the

information that APHIS recently removed from its website. The removal of this information

hinders her ability to complete her research and is likely to interfere with her ability to publish

what she has already completed. In addition to her academic work, Ms. Winders has had

numerous articles published in the media regarding the USDA's implementation and

enforcement of the AWA, including in the *Arizona Daily Star*, The *Chronicle of Higher

Education*, *Courier Journal*, *Des Moines Register*, *The Hill*, *Nature* (forthcoming),  *Newsweek*,

*The Wall Street Journal*, and other popular media outlets.  Ms. Winders' present work, as well as

her future work and interests in these issues, are harmed by Defendants' actions. That harm will

be redressed if she prevails in this action and the records at issue are immediately and

prospectively disclosed to her without requiring her to submit individual requests for such

information pursuant to FOIA.

6.     Plaintiff Physicians Committee for Responsible Medicine ("Physicians

Committee") is a non-profit public health organization that advocates for and educates the

general public about health issues, with a focus on advocating for alternatives to the use of

animals in medical education, research, and testing, and advocating for more effective scientific

methods. Physicians Committee also relied on the records that have been eliminated from the

USDA's website to carry out its research and advocacy efforts, and will continue to do so in the

future. Physicians Committee's advocacy work is harmed by Defendants' actions. That harm will

be redressed if it prevails in this action and the records at issue must be immediately and

prospectively disclosed to the organization without requiring it to submit individual requests for such information pursuant to FOIA.

7.    Plaintiff Born Free USA is a national animal advocacy non-profit organization with offices in Washington, DC, and across the country. Its mission is to end the suffering of wild animals in captivity, conserve threatened and endangered species, and encourage compassionate conservation. One of its primary campaigns is advocacy for the welfare of animals in zoos, circuses, and other exhibitions. Born Free USA implements a "Zoo Check" program where American citizens report any animal welfare deficiencies they find at facilities across the country, including injuries or lack of care to individual animals. As part of its work to act on these public complaints, including by advocating that the USDA take action to bring such facilities into compliance with the AWA, Born Free USA has historically relied heavily on the licensee information and inspection reports that were previously available from APHIS's website, and would continue to rely on this information in the future. Prompt retrieval of enforcement records helps Born Free USA act in a timely manner in the interest of animal welfare. Born Free USA's activities are harmed by Defendants' actions that have hampered access to information and delayed receipt of enforcement records indefinitely. These harms will be redressed when all records at issue are immediately and prospectively disclosed to the organization without requiring Born Free USA to submit individual requests for such information pursuant to FOIA.

8.    Plaintiff Massachusetts Society for the Prevention of Cruelty to Animals ("MSPCA") is a Massachusetts non-profit corporation founded in 1868. The MSPCA is the second-oldest humane society in the United States. Its services include animal protection and adoption, advocacy, humane education, law enforcement, and veterinary care. The MSPCA

maintains an advocacy and legislative affairs department that works on animal protection

legislation. This work has included advocating for passage of the original Animal Welfare Act in

1966, and today includes advocating for legislation addressing the welfare of animals sold in pet

shops and the use of captive wildlife in circuses. The MSPCA regularly used the enforcement

records and inspection reports that were available from APHIS's online database to educate the

public, lawmakers, and MSPCA members about the USDA's implementation and enforcement

of the AWA. The MSPCA also provided references to the database for individuals who

purchased animals raised in USDA-licensed facilities or who wanted to review a licensed entity's

regulatory history. In connection with the MSPCA's ongoing work, the MSPCA also routinely

relied on the online database and enforcement records to access information about USDA-

licensed breeders that supply animals to Massachusetts pet shops. Access to these records has

allowed the MSPCA to demonstrate to the public and local lawmakers that some Massachusetts

pet stores sell animals from USDA-licensed breeders that are operating in violation of the

Animal Welfare Act. MSPCA's work is harmed by Defendants' removal of this information

from APHIS's website. That harm will be redressed if it prevails in this action and the records

are immediately and prospectively disclosed to the organization without requiring the MSPCA to

submit individual requests for such information pursuant to FOIA.

9.     Plaintiff Beagle Freedom Project ("Project") is a project of Animal Rescue Media

and Education ("ARME"), a non-profit organization. The Project is dedicated to rescuing and

placing for adoption dogs and cats that have been used in research. It frequently uses the

information that has been posted on APHIS's website to monitor USDA's implementation of the

AWA and to identify which research facilities use animals, particularly dogs and cats, and in

what quantity, to advocate for the protection and release of such animals, and to invite such

6

facilities to learn more about post-research adoption policies, procedures, and opportunities offered by ARME. The Project's work is harmed by Defendants' actions. That harm will be redressed if it prevails in this action and the records are immediately and prospectively disclosed to the organization without requiring the Project to submit individual requests for such information pursuant to FOIA.

10.     Defendant USDA is an agency of the federal government and has possession and control of the records at issue in this case. It is responsible for implementing the Animal Welfare Act and the affirmative disclosure requirements of FOIA, including the obligation to make certain records available to the public through electronic means.

11.     Defendant APHIS is a division of the USDA which administers the AWA. As such, it also has possession and control of the records at issue here, and is responsible for implementing the affirmative disclosure requirements of FOIA, including the obligation to make certain records available to the public through electronic means. APHIS had posted the information at issue on its website, and is responsible for making the decision to remove the information.

## FACTS GIVING RISE TO PLAINTIFFS' CLAIMS FOR RELIEF

### A.     The Animal Welfare Act

12.     Congress enacted the AWA in 1966 in response to "the shocking failure of self-policing by the medical community" to ensure the humane treatment of animals used in medical research. 112 Cong. Rec. 13256 (1966). Congress amended the statute in 1970 to extend its protections to animals used in exhibitions and to pets. Pub. L. No. 91-579, 84 Stat. 1560 (1970); 7 U.S.C. § 2131(1).

13.     As stated in the statute's Statement of Policy, the AWA's primary purposes are

(1) to "insure that animals intended for use in research facilities or for exhibition purposes or for

use as pets are provided humane care and treatment"; and (2) to "assure the humane treatment of

animals during transportation in commerce." 7 U.S.C. § 2131. The Statement of Policy further

explains that "Congress further finds that it is essential to regulate . . . the transportation,

purchase, sale, housing, care, handling, and treatment of animals by carriers or by persons or

organizations engaged in using them for research or experimental purposes or for exhibition

purposes or holding them for sale as pets or for any such purpose or use." *Id.*

14.     To achieve its important remedial purposes—i.e. the protection of animals—the

AWA requires the USDA to "promulgate standards" governing "the humane handling, care,

treatment, and transportation of animals by dealers, research facilities, and exhibitors," which

"shall include minimum requirements" for "handling, housing, feeding, watering, sanitation,

ventilation, shelter from extremes of weather and temperatures, [and] adequate veterinary care."

*Id.* § 2143(a). Those standards must also include requirements for "exercise of dogs," and "for a

physical environment adequate to promote the psychological well-being of primates." *Id.* §

2143(a)(2)(B). As to animals used in research facilities, the standards must include requirements

"for animal care, treatment, and practices in experimental procedures to ensure that animal pain

and distress are minimized." *Id.* § 2143(a)(3)(A).

15.     To carry out the purposes of the statute, the USDA issues licenses to entities

subject to the Act if they can demonstrate that they are in compliance with all applicable

standards, conducts periodic inspections of regulated entities to determine whether they are in

compliance with such standards, and requires the submission of various records, including, but

not limited to, annual reports from research facilities that contain various information about the number and treatment of statutorily protected animals.

16.     The USDA, and particularly APHIS, have been repeatedly criticized over the years by the USDA's own Office of the Inspector General for failing to effectively enforce the requirements of the AWA.

**B.     Requirements of FOIA**

**1.     FOIA's Affirmative Disclosure Requirements**

17.     FOIA contains affirmative disclosure provisions that require federal agencies to provide certain records to the public as a whole, as well as provisions requiring agencies to disclose any other records to individuals in response to FOIA requests.

18.     Under FOIA's affirmative disclosure requirements, all agencies "shall make available for public inspection in an electronic format" certain records, including (1) "final opinions . . . as well as orders, made in the adjudication of cases"; (2) copies of all records, regardless of form or format, which have been released to any person under the Act and which, "because of the nature of the subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records;" and (3) a general index of the latter category of records. 5 U.S.C. § 552(a)(2).

19.     The USDA's regulations implementing FOIA provide that in determining whether records must be affirmatively disclosed under FOIA because they "have become or are likely to become the subject of subsequent requests for substantially the same records," the agency will consider the following factors: (1) previous experience with similar records; (2) the particular characteristics of the records involved, including their nature and the type of information

contained in them; and (3) the identity and number of requesters and whether there is widespread media, historical, academic, or commercial interest in the records. 7 C.F.R. § 1.4.

20.     Since Congress amended FOIA in 1996, the statute has required the agency to make all records that are subject to the affirmative disclosure requirements and created or obtained since November 1, 1996 available to the public by electronic means. 5 U.S.C. § 552(a)(2).

21.     For many years, the USDA complied with this requirement by making such records routinely available on APHIS's website, subject to redactions for information that is exempt from disclosure under FOIA, including the exemption for personal privacy, 5 U.S.C. § 552(b)(6).

22.     In the past, the USDA has acknowledged that facility inspection reports "were the most frequently requested APHIS records under the FOIA," and that "making them available on our Web site will go a long way toward informing the public of our commitment to animal welfare, while also supporting our FOIA backlog reduction efforts." Letter from Kevin Shea, APHIS Acting Administrator, and Bill Clay, APHIS Acting Associate Administrator, to APHIS Management Team and Agency's Program Leaders Group (June 19, 2009), https://www.aphis.usda.gov/foia/downloads/APHIS%20Committment%20to%20Transparency.pdf. The agency has further acknowledged that "[a]ccess to documents in the APHIS E-FOIA Reading Room will not only aid increased understanding of APHIS, but will decrease the number of FOIA requests, give the public convenient, instant access to pertinent records, and create informed citizens," and that "[t]he goal of E-FOIA is to make information publicly available online so that FOIA requests become an avenue of last resort." *Id.*

23.     In 2016, Congress further amended FOIA to make clear that the affirmative disclosure requirements apply to records that have been disclosed under the Act to any person and "that have been requested 3 or more times." 5 U.S.C. § 552(a)(2)(D)(ii)(II).

24.     The records that were previously disclosed to the public on APHIS's website have been used by Plaintiffs and others to expose inhumane treatment of animals that in turn led the USDA to take appropriate enforcement action against facilities that fail to comply with applicable AWA standards and requirements. For example, PETA has used inspection reports posted on APHIS's website to ascertain that certain bears used in an exhibit had been imported illegally into that state—leading to both state and USDA investigations and confiscation of the bears so that they could be relocated to an appropriate sanctuary. In another instance, PETA used information from APHIS's website to corroborate evidence that primates were being inhumanely treated at a research facility, leading to a subsequent USDA investigation and multiple citations of the facility for violations of AWA standards.

### 1.     Individual Requests Under FOIA

25.     With respect to all other agency records not covered by the affirmative disclosure requirements, FOIA provides that an individual or organization may request access to such information by submitting a request to the agency, and that the agency must provide access to such requested information unless it is exempt from disclosure under one of the nine exemptions to the Act.  5 U.S.C. § 552(a)(3)(A), (b). The Act further requires that the agency must release all segregable non-exempt portions of any requested record. *Id.* § 552(b).

26.     FOIA requires agencies to respond to requests made under 5 U.S.C. § 552(a)(3)(A) within 20 working days, 5 U.S.C. § 552(a)(6)(A)(i), and in "unusual

circumstances" allows an agency an additional 10 working days to respond, *id.* § 552(a)(6)(B)(i). However, Defendants rarely meet those deadlines.

27.     Defendants consistently have a substantial backlog of FOIA requests and normally processes such requests on a "first-in/first-out" basis. As a consequence, individuals seeking access to information through requests made under 5 U.S.C. § 552(a)(3)(A) typically must wait for months, and often years, to obtain a final substantive response to such requests from Defendants.

28.     For example, PETA recently received a response to a FOIA request that had been pending for over four-and-a-half years in which the agency stated that there were no records responsive to PETA's request.

29.     According to the USDA's most recent annual report to Congress, APHIS takes as long as 836 days—i.e., more than two years—to process what it acknowledges is a "simple" FOIA request, and up to 157 days—more than five months—to process a request that is required to be "expedited." USDA, FOIA Annual Report for Fiscal Year 2016,

https://www.dm.usda.gov/foia/docs/USDA%20FY16%20Final.docx.

### C.     APHIS's Decision To Remove Information From Its Website

30.     On February 3, 2017, APHIS announced that as of that date, with respect to records involving the AWA, it was "remov[ing] from its website inspection reports, regulatory correspondence, research facility reports, and enforcement records that have not received final adjudication."  Stakeholder Announcement:  Updates to APHIS's Website Involving Animal Welfare Act and Horse Protection Act Compliance Information,

https://content.govdelivery.com/accounts/USDAAPHIS/bulletins/184e0d0 (last visited Feb. 12, 2017).  The "regulatory correspondence" and "enforcement records" removed from the website

include final dispositions, including warnings, settlements, and stipulations. Despite the fact that the agency already redacted personal information from the records before posting them, it asserted that the reason for its decision was its desire to "remove certain personal information from documents it posts on APHIS' website." *Id.*

31.     Accordingly, records that for many years were easily accessible to Plaintiffs and the public via APHIS's routine posting of such records on its website are now no longer readily available to Plaintiffs via this means. As a consequence, Plaintiffs can only obtain such records by submitting individual FOIA requests to the USDA pursuant to 5 U.S.C. § 552(a)(3)(A), and enduring months, and even years, of delay before they may obtain such records—severely impeding their ability to engage in research, advocacy, and information dissemination.

32.     APHIS's decision to remove these materials from its website will also make it harder for state and local governments that require entities within their jurisdictions to comply with the requirements of the AWA to protect animals, as information concerning activities that the USDA has found to violate the statute and its implementing regulations will no longer be affirmatively disclosed on its website.

33.     Requiring Plaintiffs and others to submit individual FOIA requests for access to the information that until February 3, 2017 APHIS routinely posted on its website will significantly increase the number of FOIA requests the agency must process and, accordingly, increase the agency's FOIA backlog and the concomitant delay in responding to FOIA requests.

34.     The agency's explanation for removing this information from its website is baseless. If information is exempt from disclosure, the agency may invoke one of the nine exemptions to the Act to redact such information, as it has routinely done in the past. Because FOIA requires the release of all non-exempt segregable information, 5 U.S.C. § 552(b), the mere

fact that a record may contain exempt information does not override FOIA's affirmative disclosure mandates, and is not a valid reason for removing *all* such records from APHIS's website.

35.     The Court of Appeals for this Circuit has recently ruled that challenges to an agency's decision not to electronically post information that is required to be disclosed to the public pursuant to FOIA's affirmative disclosure requirements may only be pursued under FOIA—i.e., that because FOIA provides an adequate remedy at law for such violations, such claims may not be brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(a). *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, No. 16-5110, 2017 WL 412626 (D.C. Cir. Jan. 31, 2017).

## PLAINTIFFS' CLAIM FOR RELIEF

36.     Defendants' decision to remove from APHIS's website the information that is required to be affirmatively disclosed to the public pursuant to 5 U.S.C. § 552(a)(2) violates FOIA and particularly the 1996 and 2016 amendments to the Act which require that such information be affirmatively disclosed to the public through electronic means and without requiring individual requests for such information.

37.     Defendants' actions in removing such information from APHIS's website injure Plaintiffs by denying them immediate electronic access to such records, in the manner described in ¶¶ 1-2, 4-9 above.

**WHEREFORE**, Plaintiffs pray that this Court:

(1)     Declare that Defendants have violated FOIA by removing such information from APHIS's website;

(2)     Order Defendants to immediately make all such records that have been removed available to Plaintiffs by electronic means;

(3)     Order Defendants to make all such records available to Plaintiffs in the future by electronic means immediately after they are generated or obtained by Defendants and without requiring Plaintiffs to submit individual FOIA requests for such records;

(4)     Award Plaintiffs their costs and reasonable attorneys' fees in this action; and

(5)     Grant such other further relief as the Court may deem just and proper.

Respectfully submitted,


/s/ *Katherine A. Meyer*
Katherine A. Meyer
D.C. Bar No. 244301
Meyer Glitzenstein & Eubanks, LLP
4115 Wisconsin Ave., N.W. Suite 210
Washington, D.C.  20016
(202) 588-5206 (O)
(202) 588-5049 (fax)
kmeyer@meyerglitz.com

Date:   February 13, 2017