UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civ. No. 17-269 (CRC) |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al. | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO TAKE DISCOVERY
AND SUPPORTING MEMORANDUM**

**Introduction**

Pursuant to Fed. R. Civ. P. 26(d), Plaintiffs move the Court for leave to take limited discovery in this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Under the unique circumstances of this case, such discovery is entirely appropriate and will facilitate final resolution of the case. Defendants have represented that they will oppose this motion.

Plaintiffs are aware that in the run-of-the-mill FOIA case, involving an agency's invocation of an exemption as a basis for denying a FOIA request for specified information, discovery is ordinarily disfavored before the government has had an opportunity to move for summary judgment. However, this case is a very different kind of FOIA case—it involves the defendant agency's controversial decision to remove from its Electronic FOIA Reading Room scores of records that for many years the agency had determined were required to be *affirmatively disclosed* to the public pursuant to the 1996 E-FOIA Amendments, *without a FOIA request*. 5 U.S.C. § 552(a)(2). Plaintiffs challenge the agency's decisions to remove this information and

cease posting it in its Electronic Reading Room, and to require members of the public to instead submit individual requests for such information pursuant to FOIA—a process that takes many months, if not years, to complete and defeats the entire purpose of the affirmative disclosure requirements of E-FOIA Amendments.

The Court of Appeals recently held that challenges to an agency's refusal to make affirmative disclosures under FOIA may not be pursued through the Administrative Procedure Act and must instead be brought under FOIA, which provides for *de novo* review of agency withholdings rather than review on an Administrative Record compiled before the agency. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017); *see also* 5 U.S.C. § 552(a)(4)(B) (providing that the "court shall determine the matter de novo" and that the "burden is on the agency to sustain its action"). As a result, the agency defendant has already informed Plaintiffs' counsel that it has no intention of providing Plaintiffs or the Court an Administrative Record in this case. Accordingly, it is essential that Plaintiffs take limited discovery to probe the basis for the agency's dramatic reversal of its affirmative disclosure policy and to insure that Plaintiffs may obtain the evidence they need to demonstrate to the Court that the agency's actions are unlawful and undermine the overarching purpose of the E-FOIA Amendments.

Furthermore, the agency's publicly announced basis for removal of the information from its Electronic Reading Room was that this was necessary to protect individuals' personal privacy. *See* Stakeholder Announcement (Feb. 3, 2017) (Exhibit A). However, because the agency had for years disclosed similar records without intruding on anyone's personal privacy, and because the agency can—and for many years did—redact any information it believed was exempt from disclosure under FOIA before posting such information in its Electronic Reading Room, the

agency's publicly announced reason for its abrupt reversal of policy is groundless. Accordingly, discovery is essential in order for Plaintiffs to probe what actually motivated the agency's drastic change in position on public access, including whether the change was in fact prompted by a desire to shield from public scrutiny the agency's deficient enforcement of the Animal Welfare Act. In any event, in light of the circumstances surrounding this case, where the government has no intention of producing an Administrative Record, judicial review is *de novo* under the FOIA judicial review provision, and there are unquestionably disputed issues of material fact that will have to be resolved through some form of fact-finding process, targeted discovery is both appropriate and necessary.

Plaintiffs have already served their discovery on Defendants so that Defendants know precisely what evidence Plaintiffs wish to obtain—including records reflecting the actual basis for the agency's decision to remove whole categories of information from its Electronic Reading Room and admissions concerning the agency's past practices. Plaintiffs have informed Defendants that they may hold their responses in abeyance until this Court resolves the instant motion. For the reasons explained below, the motion should be granted.

## BACKGROUND

Before turning to Plaintiffs' need for discovery, it is important to briefly describe the relevant statutory provisions and pertinent facts at issue in this case.

### A. The Animal Welfare Act

Congress originally enacted the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131–59, in response to "the shocking failure of self-policing by the medical community" to ensure the humane treatment of animals used in medical research, 112 Cong. Rec. 13256 (1966), and it amended the statute in 1970 to extend its protections to animals used in exhibitions and in the

wholesale pet trade. Animal Welfare Act of 1970, Pub. L. No. 91-579, 84 Stat. 1560; 7 U.S.C. § 2131(1). As stated in the statute's Statement of Policy, the AWA's primary purposes are to (1) "insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment"; and (2) "assure the humane treatment of animals during transportation in commerce." 7 U.S.C. § 2131(1)–(2).

To achieve its important remedial purposes—i.e. protection of animals from inhumane treatment—the AWA requires the USDA to "promulgate standards" governing "the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors," which "shall include minimum requirements" for "handling, housing, feeding, watering, sanitation, ventilation, shelter from extremes of weather and temperatures, [and] adequate veterinary care." 7 U.S.C. § 2143(a). Those standards must also include requirements for "exercise of dogs," and "for a physical environment adequate to promote the psychological well-being of primates." *Id.* § 2143(a)(2)(B). As to animals used in research facilities, the standards must include requirements "for animal care, treatment, and practices in experimental procedures to ensure that animal pain and distress are minimized." *Id.* § 2143(a)(3)(A)

To carry out the purposes of the statute, exhibitors, breeders, and dealers subject to the Act must obtain a "license" from the USDA upon a demonstration that they are in compliance with all applicable standards, 7 U.S.C. § 2133, and research facilities and transporters must "register" with the agency and agree to comply with all such standards. 7 U.S.C. § 2136; 9 C.F.R. §§ 2.25(a), 2.30(b). The USDA conducts periodic inspections of regulated entities to determine whether they are in compliance with applicable standards, issuing "inspection reports" that contain information concerning agency citations for deviations from standards, and a stated time-frame in which such citations must be corrected. Inspection reports also indicate whether a

particular facility has been cited for a "direct violation, i.e., "one that has a high potential for adversely affecting the health of the animal";[1] a "critical violation," i.e., one that resulted in serious or severe adverse effects on an animal but occurred in the past, falsification of records, refusal to permit inspection of facilities, or harassing or threatening behavior toward an inspector[2]; or repeated violations of the same standards.

The USDA also requires regulated entities to submit various records to the agency, including, but not limited to, annual reports from both licensees and research facilities that contain various information about the number and treatment of statutorily protected animals. *See also, e.g., Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1329 (D.C. Cir. 2014). Annual reports for research facilities that use live animals must contain information explaining why any animals used in procedures involving pain or distress were not provided medication or other treatment to minimize their pain and distress—commonly referred to as "Category E explanations." *See* 7 U.S.C. § 2143(a)(7)(A); 9 C.F.R. § 2.36(b)(3); APHIS Form 7023 (Exhibit B). The USDA may refuse to renew licenses for entities that are not in compliance with applicable standards, 7 U.S.C. § 2133; 9 C.F.R. § 2.3, and it may also bring enforcement actions to suspend or revoke licenses of facilities that fail to meet the "minimum" requirements of the AWA, or to impose either civil or criminal penalties for violations of the statute. *See* 7 U.S.C. § 2149.

B.     **Requirements of FOIA**

In addition to the provisions of FOIA that require agencies to make records available upon request, 5 U.S.C. § 552(a)(3)(A), the statute contains *affirmative* disclosure provisions that

---

[1] *See, e.g.*, USDA OFFICE OF INSPECTOR GENERAL, *APHIS Animal Care Program Inspections of Problematic Dealers*, Audit Report 33002-4-SF (May 14, 2010).

[2] https://content.govdelivery.com/accounts/USDAAPHIS/bulletins/16620a4

require federal agencies to provide certain records to the public as a whole without any individual requests for such records. 5 U.S.C. § 552(a)(2). Pursuant to that mandate, all agencies "shall make available for public inspection in an electronic format" certain types of records including (1) "final opinions . . . as well as orders, made in the adjudication of cases"; (2) "copies of all records, regardless of form of format[,]" which have been released to any person under the Act and which, "*because of the nature of the subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records*;" and (3) a general index of the latter category of records. 5 U.S.C. § 552(a)(2) (emphasis added).

The USDA's regulations implementing FOIA provide that in determining whether records must be affirmatively disclosed because they "have become or are likely to become the subject of subsequent requests for substantially the same records," the agency will consider the following factors: (1) previous experience with similar records; (2) the particular characteristics of the records involved, including their nature and the type of information contained in them; and (3) the identity and number of requesters and whether there is widespread media, historical, academic, or commercial interest in the records. 7 C.F.R. § 1.4(a)(4)(i)–(iii).

In 1996, Congress amended FOIA to require that agencies make all records subject to the affirmative disclosure requirements available to the public by electronic means. 5 U.S.C. § 552(a)(2). As explained by the House Report, the "underlying goal" of these E-FOIA Amendments was "to encourage on-line access to Government information," so that "*the public can more directly obtain and use Government information*," which can also "*result in fewer FOIA requests*, thus enabling FOIA resources to be more efficiently used in responding to complex requests." H.R. REP. NO. 104-795, at 11 (1996) (emphasis added). Indeed, finding that agency delays in responding to individual requests "continue as one of the most significant FOIA

problems," *id.* at 13, Congress expressed its intent that "[w]ith more affirmative disclosure, agencies can better use their resources," which will "enable agencies to more efficiently use their limited resources to complete requests on time." *Id*. at 12–13.  As explained by Senator Patrick Leahy, one of the sponsors of the legislation, as a result of the E-FOIA amendments "as more information is made available online, the labor intensive task of physically searching and producing documents should be reduced," and "[t]he net result should be increased efficiency in satisfying agency FOIA obligations, reduced paperwork burdens, reduced errors and better service to the public." 142 Cong. Rec. S10,894 (daily ed. Sept. 18, 1996).

In 2016, Congress further amended FOIA to make clear that the affirmative disclosure mandate applies with respect to records that have been disclosed under the Act to any person and "that *have been requested 3 or more times*." 5 U.S.C. § 552(a)(2)(D)(ii)(II) (emphasis added).

### C. The USDA's Past Practices Implementing FOIA's Affirmative Disclosure Mandate.

For many years, pursuant to FOIA's affirmative disclosure and E-FOIA requirements, the USDA routinely posted on APHIS's FOIA Electronic Reading Room inspection reports, annual reports, regulatory correspondence, enforcement records, and lists of entities licensed under the AWA. *See* Exhibit A ("*For more than a decade*, [APHIS] has shared information on its website concerning its administration of the Animal Welfare Act") (emphasis added). Such records have been heavily relied on by Plaintiffs, other animal protection groups, research advocacy organizations, reporters, state and local governments, and others to monitor and keep the public, Congress, and state and local enforcement entities informed about violations of the AWA and the USDA's implementation and enforcement (and lack thereof) of that statute. *See* Complaint ¶¶ 1, 5–9, 24. Moreover, if the agency believed any information contained in such

records was exempt from disclosure under one of the nine FOIA exemptions, it nevertheless posted the record with such information redacted. *Id.* ¶ 21.

In the past, the USDA informed the public that "[a]ccess to documents in the APHIS E-FOIA Reading Room will not only aid increased understanding of APHIS, but will decrease the number of FOIA requests, give the public convenient, instant access to pertinent records, and create informed citizens," and that *"[t]he goal of E-FOIA is to make information publicly available online so that FOIA requests become an avenue of last resort*." Complaint ¶ 22; Letter from Kevin Shea, Acting Administrator APHIS, to AMT and PLG, *available at* https://www.aphis.usda.gov/foia/downloads/APHIS%20Committment%20to%20Transparency.pdf (emphasis added). The USDA has also informed the public that inspection reports "were the most frequently requested APHIS records under [] FOIA," and that "making them available on our Web site will *go a long way toward informing the public of our commitment to animal welfare, while also supporting our FOIA backlog reduction efforts*." *Id.* (emphasis added). According to an internal agency memorandum, APHIS's counsel also long ago concluded that "inspection and annual reports" "*qualify as records subject to multiple requests under E-FOIA and must be made available to the pubic via electronic means, unless there is an applicable exemption from disclosure under FOIA*." Memorandum for Chester A. Gipson, et al. from Kenneth E. Cohen, Assistant General Counsel (May 12, 2004) (Exhibit C) (emphasis added).

### D. APHIS's Removal of Vast Quantities of Information from Its Electronic Reading Room.

On February 3, 2017, APHIS abruptly announced that as of that date, with respect to records involving the AWA, it was "remov[ing] from its website inspection reports, regulatory correspondence, research facility reports, and enforcement records that have not received final adjudication." Exhibit A. The "regulatory correspondence" and "enforcement records" removed

from the website include final dispositions, including warnings, settlements, and stipulations. Complaint ¶ 30. Despite the fact that the agency already redacted personal information from such records before posting them, it represented that the reason for its decision was its desire to "remove certain personal information from documents it posts on APHIS' website." Exhibit A.

The agency further announced that because it was removing these routinely posted records from its website, "[t]hose seeking information from APHIS regarding inspection reports, regulatory correspondence, and enforcement records should submit Freedom of Information Act (FOIA) requests for the information." *Id.* Accordingly, critically important records that for many years were easily accessible to Plaintiffs and the public through APHIS's Electronic Reading Room are now no longer readily available to Plaintiffs via that forum. As a consequence, Plaintiffs can only obtain such records by submitting individual FOIA requests to the USDA pursuant to 5 U.S.C. § 552(a)(3)(A), and enduring months and even years of delay before they may obtain such records—severely impeding their ability to engage in research, advocacy, and information dissemination on the issues central to their work. Complaint ¶¶ 1, 4-9, 24. In fact, according to the USDA's most recent annual report to Congress, APHIS takes as long as 836 days—i.e. more than two years—to process what it acknowledges is a "simple" FOIA request, and up to 157 days—more than five months—to process a request that is required by FOIA to be "expedited." Complaint ¶ 29; U.S. DEP'T OF AGRIC., FREEDOM OF INFORMATION ACT ANNUAL REPORT (2016).

## ARGUMENT

Under the unique circumstances underlying this litigation, the Court should authorize Plaintiffs to embark on targeted discovery that will crystallize the relevant issues and facilitate resolution of the litigation. As explained, this is not a routine FOIA case where a requester of

information is challenging an agency's decision to withhold a particular document based on a claim of exemption. On the contrary, this is an unusual case challenging the USDA's wholesale removal of thousands of records from its Electronic Reading Room that, prior to February 3, 2017 were for years routinely made available to the public pursuant to FOIA's affirmative disclosure mandate, 5 U.S.C. § 552(a)(2), and the agency's own determinations that such records fall within the categories of records that must be disclosed to the public under that mandate.

Indeed, to our knowledge, this is the first such case that has been brought against any agency since the D.C. Circuit issued its decision in *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017), which held that such cases may *only* be brought under FOIA and resolved in accordance with the *de novo* judicial review provided for in that statute—i.e., they may not be pursued under the record review provisions of the APA—and that "a plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so *without first making a request for specific records under section 552(a)(3)*." *Id.* at 1240 (emphasis added). That case also established that plaintiffs seeking to enforce FOIA's affirmative disclosure requirements may obtain a "prospective injunction"—i.e. an order requiring the agency to disclose such reading room materials in the future, again without requiring a plaintiff to submit a FOIA request for such materials pursuant to § 552(a)(3); *Id.* at 1242.

Based on all of the circumstances presented here, there will inevitably be material issues of fact that need to be resolved before this Court will be in a position to issue a ruling on the merits of Plaintiffs' claims. These include, for example, (1) the actual reasons that led the agency to abruptly remove previously disclosed information from its Electronic Reading Room; (2) the basis for the agency's statement that it did so solely to protect individuals' personal

privacy when (a) it has never had trouble redacting personal privacy information in the past, and (b) such reasoning does not support the agency's removal of *entire categories* of information from its Reading Room; (3) the extent to which the information that has been removed from the Reading Room in fact qualifies for affirmative disclosure under Section 552(a)(2); and (4) the extent to which the agency's *own* documents concede that the information at issue should be affirmatively disclosed rather than subject to individual FOIA requests.

Accordingly, Plaintiffs should be permitted to take limited discovery concerning these matters. *See, e.g.*; *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (acknowledging appropriateness of discovery in FOIA case "[b]ased on conflicting evidence" regarding the adequacy of the agency's search for responsive records) (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368-70 (D.C. Cir. 1980)); *Neugent v. U.S. Dep't of the Interior*, 640 F.2d 386 (D.C. Cir. 1981) (allowing discovery regarding the adequacy of the agency's search for records); *In Defense of Animals v. U.S. Dep't of Agric.*, 656 F. Supp. 2d 68 (D.D.C. 2009) (discovery and trial held in FOIA case involving disputed issues of material fact).

The propriety of discovery is particularly acute when the agency's past practices and statements about what must be included in its FOIA Electronic Reading Room are completely at odds with its February 2017 decision to remove such records from the Reading Room. *See Jett v. Fed. Bureau of Investigation*, 2017 WL 978969, at *6 (D.D.C. Mar. 13, 2017) (allowing discovery where agency has made inconsistent representations about the location of responsive records); *Weisberg*, 627 F.2d at 368-70 (allowing plaintiff to take discovery where the agency's own past assertions contradicted its position that certain requested records did not exist); *see also Weisberg v. U.S. Dep't of Justice*, 543 F.2d 308, 310-11 (D.C. Cir. 1976) (same).

The Plaintiffs rely heavily on this information—which since February 3, 2017 has been removed from APHIS's Reading Room—to carry out their daily research, advocacy, and animal protection work. Therefore, there is no legitimate reason to delay Plaintiffs' ability to obtain evidence they need in order to present their strongest case to the Court as to why the agency has acted unlawfully, and why it must be ordered to promptly make such information available without requiring Plaintiffs to submit individual FOIA requests. Indeed, the agency's position that Plaintiffs and others seeking such information must now do so through individual FOIA requests, *see* Stakeholder Announcement (Exhibit A), is contrary to the entire purpose of the affirmative disclosure mandate of FOIA and especially the 1996 E-FOIA Amendments. As explained *supra*, one of the primary purposes of that legislation was to make it *easier* for the public to obtain access to certain categories of information and to eliminate the need to submit individual FOIA requests which often take months, if not years, for the agency to process. *See* H.R. Rep. No. 104-795 at 11 (stressing that the "underlying goal" of the amendments was to "encourage on-line access to Government information," so that "the public *can more directly obtain and use Government information*," which will "*result in fewer FOIA requests*, thus enabling FOIA resources to be more efficiently used in responding to complex requests.") (emphasis added).

Therefore, particularly because Defendants have no intention of providing an Administrative Record in this case, Plaintiffs should not have to face further delay in marshalling the evidence that will help inform the Court about the basis for and legality (or lack thereof) of the agency's about-face on public access and the need for the requested injunctive relief in view of that change in position. As the Court of Appeals for this Circuit long ago recognized, "[i]t is vital that some process be formulated that will (1) assure that a party's right to information is not

submerged beneath government obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information." *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973); *see also Natural Res. Def. Council v. Curtis*, 189 F.R.D. 4, 8 (D.D.C. 1999) (explaining in case under Federal Advisory Committee Act that "permitting discovery and leaving the question of the sufficiency of plaintiffs' case as a matter of law to a point after discovery closes is the way in which the federal courts handle such matters").

Moreover, allowing Plaintiffs to engage in limited discovery will *narrow* the scope of issues in dispute. For example, Plaintiffs seek to have Defendants respond to a series of carefully tailored requests for admissions regarding, *inter alia*, (a) the nature of the records that have been removed from the Electronic Reading Room; (b) the agency's prior determinations that such records were in fact required to be disclosed pursuant to FOIA's affirmative disclosure requirements; (c) the fact that such records are "likely to become the subject of subsequent requests for substantially the same records" within the meaning of FOIA's affirmative disclosure requirements, 5 U.S.C. § 552(a)(2); and (d) the fact that in the past the agency had redacted from such records any information it believed was legitimately exempt from disclosure. Obtaining such admissions from the agency will eliminate the need for Plaintiffs to prove each of these facts—a task that has been made substantially more difficult now that the information that used to be routinely disclosed to the public has been *removed* from the agency's website. Therefore, because "resolution of these disputes [is] essential to disposition of [Plaintiffs'] . . . claims," the Court should permit Plaintiffs to take discovery in this case. *Weisberg*, 627 F2d at 371.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion for leave to take discovery should be granted.

                                                         Respectfully submitted,

                                                         __/s/_____
                                                         Katherine A. Meyer
                                                         D.C. Bar No. 244301
                                                        Meyer Glitzenstein & Eubanks, LLP
                                                        4115 Wisconsin Ave., N.W. Suite 210
                                                        Washington, D.C.  20016
                                                         (202) 588-5206 (O)
                                                         (202) 588-5049 (fax)
                                                         kmeyer@meyerglitz.com

Date:   April 18, 2017