**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————— )
PEOPLE FOR THE ETHICAL TREATMENT )
OF ANIMALS, INC., et al., )
 )
                                    Plaintiffs, )
 )
             v. )          No. 1:17-cv-00269-CRC
 )
UNITED STATES DEPARTMENT OF )
AGRICULTURE, et al., )
 )
                                    Defendants. )
———————————————————————— )

**DEFENDANT'S MOTION TO**
**DISMISS THE COMPLAINT**

Pursuant to Fed. R. Civ. P.12(b)(1) and (b)(6), defendants respectfully move to dismiss

the complaint, for lack of jurisdiction and for failure to state a claim.  In support of the said

Motion, defendants respectfully refer the Court to the attached Memorandum of Points and

Authorities and Proposed Order.

1

Dated:  April 24, 2017                    Respectfully submitted,

                                          CHAD A. READLER
                                          Acting Assistant Attorney General

                                          CHANNING D. PHILLIPS
                                          United States Attorney

                                          MARCIA BERMAN
                                          Assistant Branch Director
                                          Civil Division

                                           _/s/ Peter M. Bryce____ _____
                                          PETER M. BRYCE
                                          (IL Bar No. 6244216)
                                          Senior Counsel
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          P.O. Box 883, Room 7138
                                          Washington, D.C. 20530
                                          Tel: (202) 616-8335
                                          Fax: (202) 616-8470
                                          E-mail: peter.bryce@usdoj.gov
                                          Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
PEOPLE FOR THE ETHICAL TREATMENT            )
OF ANIMALS, INC., et al.,                                )
                                                          )
                                    Plaintiffs,          )
                                                          )
                          v.                              )          No. 1:17-cv-00269-CRC
                                                          )
UNITED STATES DEPARTMENT OF                 )
AGRICULTURE, et al.,                                    )
                                                          )
                                    Defendants.         )
_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT**

## INTRODUCTION

The United States Department of Agriculture ("USDA"), through its component agency the Animal and Plant Health Inspection Service ("APHIS") or, collectively with USDA, the "agency" or "defendant") administers and enforces the Animal Welfare Act ("AWA"). Although not legally required to do so under FOIA, the agency has for many years routinely posted on the APHIS website various categories of records pertaining to its enforcement of the AWA.  In early February, the agency temporarily removed several categories of records from the website, citing the need to remove certain personal information from the records it posts online. The agency emphasized that the decision was not final, but was a precautionary measure to protect individual privacy during an ongoing review process.  Pursuant to that ongoing process, the agency began reposting many of the records to the website shortly thereafter, explaining that it would continue to review and determine which records are appropriate for reposting.

Plaintiffs, various advocacy organizations (and one individual) concerned with animal welfare, filed this lawsuit ten days after the records were taken off the agency's website.  They seek immediate production of all the removed records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), as well as ongoing production of all "similar" records in the future as they are obtained or generated.  They do not allege, as FOIA plaintiffs typically do, that the agency violated FOIA by failing to provide them with all records sought in a properly submitted request under 5 U.S.C. § 552(a)(3).  Instead, they rely on a different provision of the FOIA, 5 U.S.C. § 552(a)(2), which – when applicable – requires agencies to affirmatively make certain records available to the public by electronic means.  According to plaintiffs, all records previously posted on the website were legally required to be there under § 552(a)(2), and the agency violated this provision by temporarily removing those records to ensure adequate

1

protection of personal privacy information.  Plaintiffs further claim that this provision entitles them to immediate disclosure of all such records and of all similar records obtained or generated in the future.

Plaintiffs' claim is entirely improper under FOIA and should be dismissed.  Subject matter jurisdiction under FOIA turns on some showing that the disputed records have been "improperly withheld" from the plaintiff -- as in the usual case where a plaintiff alleges it did not receive all records sought in a request submitted under 5 U.S.C. § 552(a)(3).  Plaintiffs do not claim that any such improper withholding exists here.  Rather, they assert that removal of records from the website deprived them of access to records to which they are entitled under § 552(a)(2)(D), without any need to submit a request.  But that provision, which requires public disclosure of certain records that have been or likely will be requested multiple times, is expressly limited to records that have already been processed and "released" to a "person" in response to a specific request under § 552(a)(3).  It does not apply to whole *categories* of records that the agency proactively makes available to the public on its website when it is under no legal obligation to do so.  Having identified no disclosure obligation that could form the basis of an "improper withholding" subject to judicial review under FOIA, the complaint should be dismissed.

Even if the affirmative disclosure provision applied, plaintiffs would still be required to submit a proper FOIA request and to exhaust their remedies before seeking judicial review. Plaintiffs do not claim to have done so here, and their claim should be dismissed on this ground as well.  Plaintiffs' erroneously assume that because they are seeking access to records under § 552(a)(2), rather than § 552(a)(3), they are not required to submit a FOIA request for the records they seek.  It is well-settled, however, that such a request is a mandatory prerequisite to seeking

judicial review under FOIA, even where – as here – plaintiffs' claim purportedly arises under the statute's affirmative disclosure provision.  By failing to file such a request, plaintiffs are effectively asking the Court to let them to jump to the front of the line, to the detriment of other requesters who have properly availed themselves of the remedies Congress provided.

Finally, even if plaintiffs could surmount the threshold jurisdictional prerequisites to judicial review under FOIA, their claim would still be subject to dismissal on ripeness grounds because it is not fit for judicial resolution on this complaint.  First, the removal of records was not a final agency action that is ripe for judicial review.  The agency made clear that it was simply a temporary precaution to ensure protection of personal privacy information while the agency continues the ongoing review process to determine what could properly be reposted on the website and in what form.  Indeed, that ongoing process has already resulted in many thousands of records being reposted to the agency's website.  Judicial review would prematurely disrupt that very process and may, ultimately, turn out to be unnecessary.  At the same time, judicial review would also be completely unmanageable because of the need to make individualized factual determinations about a universe of disputed records that is large and in constant flux.  Assuming plaintiffs' claim ultimately needs to be adjudicated at all, it would best be resolved in the context of a particular request for records.

## BACKGROUND

## I.      RELEVANT STATUTORY FRAMEWORK

FOIA creates three different types of disclosure obligations under 5 U.S.C. §§ 552(a)(1), (a)(2), and (a)(3).  The most familiar (and the most frequently-litigated) provision, § 552(a)(3), provides that agencies must "make . . . records promptly available" in response to specific requests. 5 U.S.C. § 552(a)(3)(A).  In addition to the obligation to respond to specific requests

under § 552(a)(3), FOIA contains two provisions requiring government agencies to affirmatively make certain types of records available to the public.  *See Id.* §§ 552(a)(1), (2).  The affirmative disclosure provision at issue in this case – sometimes called the "reading room" provision – requires agencies to make certain records "available for public inspection in an electronic format."  *Id.* § 552(a)(2).

The specific reading room provision at issue here, § 552(a)(2)(D), applies to certain records that have been "previously released" in response to a FOIA request under § 552(a)(3). Specifically, it provides that agencies shall make available for public inspection and copying:

**(D)** copies of all records, regardless of form or format—

    **(i)**    that have been released to any person under paragraph (3); and

    **(ii)**    **(I)** that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or

        **(II)** that have been requested 3 or more times

*Id.* § 552(a)(2)(D).  Under this provision, records "that have been released" in response to a FOIA request under 5 U.S.C. § 552(a)(3) should be made available if those records have been requested a total of three times, or are likely to be the subject of future requests.

Even where a disclosure obligation exists, however, not all records must be disclosed or disclosed entirely under FOIA.  The Act contains nine specific exemptions, which allow the agency to withhold from disclosure the information falling within such exemptions.  *See id.* § 552(b).  In light of the language of § 552(b)—"[t]his section does not apply to matters that [fall within an exemption]"—agencies may withhold such exempt information regardless of whether the record falls within the affirmative-disclosure provisions of § 552(a)(2), or was requested by an individual under § 552(a)(3). *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160 (1975)

4

(holding that the attorney work-product privilege applied, and thus the document was exempt regardless of whether it fell within a § 552(a)(2) category).

Finally, FOIA provides for judicial review, granting courts jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Under this provision, "federal jurisdiction is dependent upon a showing that an agency has (1) improperly; (2) withheld; (3) agency records." *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). *See also McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983). This provision applies to requests for records under all three of FOIA's access provisions, §§ 552(a)(1), (a)(2), and (a)(3). *See Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1202 (D.C. Cir. 1996).

## II.    FACTUAL AND PROCEDURAL HISTORY[1]

The agency administers and enforces the AWA, which Congress enacted to, *inter alia*, "insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment." 7 U.S.C. § 2131(1). To accomplish these goals, Congress instructed the USDA to "promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors." *Id.* § 2143(a)(1). "To carry out the purposes of the statute, the USDA issues licenses to entities subject to the Act if they can demonstrate that they are in compliance with all applicable standards, conducts periodic inspections of regulated entities to determine whether they are in compliance with such standards, and requires the submission of various records, including, but

---

[1] For purposes of this Motion, the truth of the facts alleged in the complaint is assumed but not conceded.

not limited to, annual reports from research facilities that contain various information about the number and treatment of statutorily protected animals." Compl. ¶ 15, ECF No. 1.

For many years, APHIS at times routinely made available on its website certain records pertaining to the enforcement of the AWA. *Id.* ¶¶ 1, 21. In 2005, one category of these records became the subject of litigation after the agency removed certain records from its website in 2002 (inspection reports and research facility annual reports) based on concerns about domestic terrorism. *See Humane Society of the United States* ("*HSUS*") *v. USDA*, 1:05-cv-00197 (D.D.C. 2005). Plaintiffs in that case had submitted FOIA requests for certain research facility annual reports and filed claims under FOIA and the Administrative Procedure Act. The lawsuit eventually settled without a ruling on plaintiffs' substantive claims and the agency shortly thereafter resumed posting certain research facility annual reports pursuant to a settlement, as well as posting other categories of records.[2] Subsequent public statements by the agency suggest that it did not view the routine posting of categories of records to be legally required under FOIA, but that the practice was nonetheless justified by Executive Branch policies encouraging the practice. The agency also noted that proactively posting categories of records which are, in lay terms, frequently requested or of interest to the public, would reduce the agency's FOIA backlog and costs as well as make the records available to the public in a more timely manner. *See*, *e.g.*, USDA, APHIS' Commitment to Transparency, https://go.usa.gov/x5DCx (last visited Apr. 24, 2017).

On February 3, 2017, the agency again removed various categories of these records from its website, citing concerns about protecting personal privacy information. Compl. ¶ 30. *See*

---

[2] Records that were subject to the prior settlement are now posted on the website.

*also* USDA, Stakeholder Announcement: Updates to APHIS' Website Involving Animal Welfare Act and Horse Protection Act Compliance Information, Published Feb. 3, Revised Feb. 7 ("Revised Stakeholder Announcement") http://go.usa.gov/xXhEc (last visited Apr. 24, 2017). Pursuant to a "comprehensive review of the information it posts on its website," the agency "implemented actions to remove certain personal information from documents it posts on APHIS' website involving the Horse Protection Act and the Animal Welfare Act." *Id.* It removed various types of records, including "inspection reports, regulatory correspondence, research facility annual reports, and enforcement records that have not received final adjudication." *Id.* The agency's announcement also invited those seeking such records to submit FOIA requests. Further, consistent with § 552(a)(2)(D), the agency added that if records released in response are "frequently requested via the FOIA process, in most instances APHIS may post appropriately redacted versions to its website." *Id.*

As the agency made clear shortly thereafter, the agency had not made a final decision about what records would be made available to the public on the agency's website, but the removal was part of an ongoing review process in which the agency was "striving to balance the need for transparency with rules protecting individual privacy." *Id.* The agency emphasized that the removal decision was an additional measure "to protect individual privacy," and that "[a]djustments may be made regarding information appropriate for release and posting." *Id.*

On February 13, 2017, plaintiffs filed this FOIA lawsuit, challenging the agency's removal of inspection and enforcement records from the website. They seek to compel the agency to disclose these records, and to "proactively disclose all similar records in the future." Compl. ¶ 1. Plaintiffs assert that the records were required to be made available under FOIA's reading room provision, and in particular, § 552(a)(2)(D). *Id.* ¶ 17-24, 26, 36. According to

7

plaintiffs, § 552(a)(2)(D) affirmatively required the agency to post the removed records on the agency's website. *See id.* They ask this Court to "immediately" make all such records "available to Plaintiffs by electronic means." *Id.* ¶ 37(2). They also seek prospective injunctive relief requiring the agency to "make all such records available to Plaintiffs in the future by electronic means immediately after they are generated or obtained . . . ." *Id.* ¶ 37(3). Although they seek production of records under FOIA, they do not claim to have submitted a FOIA request, or to have exhausted their administrative remedies with respect to any such request.

In keeping with its statement at the time it temporarily removed the records from its website, and as part of the ongoing review process, the agency shortly thereafter began reposting to the website many of the records it had removed on February 3. These updates to the agency website were announced in a series of Stakeholder Announcements on the agency's website. On February 17, the agency reposted the first batch of annual reports of research institutions and inspection reports for certain Federal research facilities in the same redacted form that they were posted previously. On February 24, the agency posted certain inspection reports for various regulated business entities in the same redacted form as before. Again, on March 3, it posted additional inspection reports for regulated business entities in the same redacted form as before. On March 10, the agency posted additional annual reports, including reports for 2010-2013. On each occasion, the agency noted that it "will continue to review records and determine which information is appropriate for reposting." *See* USDA, APHIS, Stakeholder Announcements dated Feb. 17, Feb. 24, Mar. 3 & Mar. 10: Updates to APHIS' Website Involving Animal Welfare Act Compliance Information. https://go.usa.gov/x5bpS (last visited Apr. 24, 2017).

## LEGAL STANDARDS

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "the plaintiff bears the burden of establishing" that the court has jurisdiction. *Gammill v. U.S. Dep't of Educ.*, 989 F. Supp. 2d 118, 120 (D.D.C. 2013) (quoting *Adams v. U.S. Capitol Police Bd.*, 564 F. Supp. 2d 37, 39–40 (D.D.C. 2008)) (internal quotation mark omitted). Although the court must "accept all of the factual allegations in the complaint as true," *id.* at 120–21 (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)) (internal quotation marks omitted), it "must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim" because "subject matter jurisdiction focuses on the court's power to hear the claim," *id.* at 120 (quoting *Bailey v. Wash. Metro. Area Transit Auth.*, 696 F. Supp. 2d 68, 71 (D.D.C. 2010)) (internal quotation marks omitted). A court may consider materials outside the pleadings as it deems appropriate in order to resolve the question of its jurisdiction. *Fludd v. Mitchell*, 181 F.Supp.3d 132, 137 (D.D.C. 2016).

On a Rule 12(b)(6) motion for failure to state a claim, a court must assess whether the complaint alleges sufficient facts that, if accepted as true, state an entitlement to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although the Court must accept the facts pleaded as true, legal assertions devoid of factual support are not entitled to this assumption. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271,

1276 (D.C. Cir. 1994).  A complaint that presents merely "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"In determining whether a complaint states a claim, the court may consider the facts alleged in

the complaint, documents attached thereto or incorporated therein, and matters of which it may

take judicial notice."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).  A court

may take judicial notice of information posted on official public websites of government

agencies.  *See, e.g.*, *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43

F.Supp.3d 28, 33-34 (D.D.C. 2014).

## ARGUMENT

Plaintiffs' FOIA claim is subject to dismissal for lack of jurisdiction because they do not

identify any "improper withholding" subject to judicial review under FOIA.  First, they cannot

show that the disputed records are "improperly withheld" under FOIA's judicial review

provision, § 552(a)(4)(B), because they do not identify any conceivably applicable disclosure

obligation under § 552(a)(2)(D) or any other provision.  Second, even if § 552(a)(2) applied to

the previously-posted records, plaintiffs  do not claim to have properly submitted a FOIA

request, or to have exhausted their administrative remedies with respect to any such request.

Finally, plaintiffs' FOIA claim is not prudentially ripe for judicial review, and thus the complaint

is also subject to dismissal under Rule 12(b)(6).

## I.     Plaintiffs Cannot Invoke the Court's Jurisdiction Under FOIA Because They Do Not Plausibly Allege that the Records Have Been "Improperly Withheld"

To invoke the Court's subject matter jurisdiction under FOIA, the statute requires a

showing that agency records have been "improperly withheld" from the complainant.  *See* 5

U.S.C. § 552(a)(4)(B).  *See also Kissinger*, 445 U.S. at 150; *McGehee*, 697 F.2d at 1105.  Here,

plaintiffs do not make this jurisdictional showing, as FOIA plaintiffs typically do, by claiming

that the agency violated an obligation under § 552(a)(3) to produce records in response to a

specific request.  Rather, they assert that the agency violated FOIA's "reading room provision,"

§ 552(a)(2), by removing records from the agency's website that were previously posted there.

Compl. ¶¶ 1, 36-37.  But this claim rests on the premise that all records previously-posted on the

website were, and are, *legally required* to be posted there under § 552(a)(2).  Plaintiffs have not

alleged that to be the case.

Plaintiffs purport to rely on § 552(a)(2)(D).[3]  *See* Compl. ¶ 23.  As discussed above, that

provision applies to records that: (1) have previously "been released to any person" in response

to a FOIA request under § 552(a)(3); and (2) the agency determines that "because of the nature

of their subject matter, [the records] have become or are likely to become the subject of

subsequent requests for substantially the same records," if the records have been requested

"[three] or more times."  5 U.S.C. § 552(a)(2)(D).  Unlike the first three affirmative disclosure

obligations under § 552(a)(2), *see* § 552(a)(2)(A)-(C), which apply generally to identified

categories of records, § 552(a)(2)(D) does not even potentially mandate disclosure until a

particular record, or a set of records, is actually processed and "released" to a "person" in

_____

[3] The complaint also mentions 5 U.S.C. § 552(a)(2)(A) (applying to "final opinions . . .
made in the adjudication of cases"), Compl. ¶ 18, and later refers to "warnings, settlements, and
stipulations" as "final dispositions," *id.* ¶ 30.  To the extent these vague allegations could be read
as suggesting that § 552(a)(2)(A) applies to those categories of records, the complaint contains
no plausible allegations to support such a conclusion.  Mere "labels and conclusions" are
insufficient under *Twombly*.  Section 552(a)(2)(A) only applies to decisions that: (1) "result from
an adjudicatory process such that [a court] would consider them 'final opinions' rendered in the
'adjudication of a case'" and (2) "constitute the making of law or policy by an agency," i.e.,
decisions that set some precedent or have some "binding force on the agency in later
decisions."  *American Immigration Lawyers Assoc'n v. EOIR*, 830 F.3d 667, 679 (D.C. Cir.
2016) (citations omitted).  It is difficult to see how "warnings, settlements, and stipulations"
could possibly meet these requirements.

response to a specific FOIA request under § 552(a)(3). *See id.* § 552(a)(2)(D)(i). The agency's

regulations likewise make clear that the provision is limited to, *inter alia*, records that "have

been released pursuant to a FOIA request under 5 U.S.C. [§] 552(a)(3)." 7 C.F.R. § 1.4(a)(4). If

and only if a record meets this threshold requirement, then it will be subject to disclosure if that

"previously released" record has been or likely will be requested multiple times in accordance

with § 552(a)(2)(D)(ii).

Plaintiffs have not alleged that all disputed records meet this threshold requirement, nor is

it clear how they could. There is certainly no suggestion that all records removed from the

website had been processed and released in response to a FOIA request prior to being posted

there. To the contrary, the complaint suggests that these records were posted automatically,

without waiting for a particular FOIA request, simply because they fell into certain categories of

records deemed to be of interest to the public. *E.g.*, Compl. ¶ 1 (stating that "inspection reports,

research facility annual reports, regulatory correspondence, enforcement records, and lists of

entities licensed under the Animal Welfare Act . . . *have been routinely posted for many years*"

(emphasis added)); *see also id.* ¶ 31. Nor is there any suggestion that these records were released

in response to a FOIA request *after* being made publicly available on the website. To the

contrary, the central premise of the complaint is that up until they were removed on February 3,

the records never needed to be requested at all, because they were already "easily accessible" to

plaintiffs and the public on the agency website – having "routine[ly]" been made available there

"for many years."[4]  Compl. ¶ 31.

---

[4] Even if there were scattered instances in which some such records were processed and
released in response to individual FOIA requests, it would not necessarily mean those records
met all the requirements for mandatory disclosure under 5 U.S.C. § 552(a)(2)(D). Nor would it
address the defects in plaintiffs' pleading which claims that a mandatory disclosure obligation

Thus, Plaintiffs' claim that § 552(a)(2)(D) applies categorically to all disputed records is not consistent with the allegations in their own complaint. This is especially obvious with respect to Plaintiffs' claimed right to "future" records that are "similar" to those removed from the website. *See* Compl. ¶ 1. Plaintiffs ask the Court to enter prospective relief requiring the agency to make such records available "*immediately* after they are generated or obtained" by the agency. *Id*. ¶ 37(3) (emphasis added). But § 552(a)(2)(D) could not possibly apply "immediately" after a record is "generated or obtained." The provision would not even potentially require disclosure of such a record until it is requested by a person under § 552(a)(3), and then processed and released to that person in response to the request. *See* 5 U.S.C. § 552(a)(2)(D)(i). The complaint does not address this point at all. Instead, it appears to simply assume that § 552(a)(2)(D) requires disclosure of all records that are or may at some point become "frequently requested," and indeed, that it requires disclosure of entire *categories* of records simply because the agency receives frequent requests for different records falling within that broad category. Plaintiffs' interpretation is contrary to the plain language of the provision.

Plaintiffs cite a 2009 letter from APHIS leadership to support their claim that § 552(a)(2)(D) applies, Compl. ¶ 23, but that letter in no way suggests that the disputed records meet the provision's requirements, or that such posting was legally required. Quite the opposite, it emphasized that the agency was undertaking to post records – including inspection reports – on the website even though it was *not* required to do so under FOIA. The letter cited posting of inspection reports as an example of the agency's broader effort to go *beyond* what FOIA legally requires, in the interest of promoting transparency, and as part of a push to make records

_____

under that provision applies *categorically*, to all records previously posted and to all "similar" records that are obtained and generated in the future.

13

"available online *even before we receive a single FOIA request for them.*" *See* USDA, APHIS'
Commitment to Transparency, at 2, https://go.usa.gov/x5DCx (emphasis added) (last visited Apr.
24, 2017).  It also emphasized the President's statement that agencies "need not only comply
with FOIA, but should work to share information proactively on policies and decisions so that
members of the public don't have to use the FOIA to obtain information held by their
Government." *See id.* at 1.

Agencies often post records or categories of records on their websites in this manner,
even when they are not required to do so under FOIA.  As noted in the letter, such proactive
publication is encouraged by Executive Branch policies.  *See* Presidential Memorandum for
Heads of Executive Departments and Agencies Concerning Transparency and Open
Government, 74 Fed. Reg. 4685 (Jan. 21, 2009); Memorandum of the Attorney General for
Heads of Executive Departments and Agencies Concerning the Freedom of Information Act,
(March 19, 2009), at 3, https://go.usa.gov/x5k2X (last visited Apr. 24, 2017) (encouraging
agencies to systematically post information online in advance of any request, and explaining that
doing so "reduces the need for individualized requests and may help reduce existing backlogs").
And indeed, the agency remains committed to proactively publishing the disputed records, to the
extent appropriate in light of privacy concerns.

Perversely, plaintiffs seem to suggest that such routine, proactive posting of records
should itself trigger a mandatory legal obligation under § 552(a)(2)(D), thereby making such
proactive disclosures legally obligatory (and, according to plaintiffs, irrevocable) once the
records are posted to the agency website.  *See*, *e.g*., Compl. ¶¶ 1, 21 (alleging that the agency
"complied" with § 552(a)(2) "by making such records routinely available on APHIS's website").
If accepted, such a position would effectively penalize agencies for engaging in proactive

14

disclosures that go beyond what FOIA legally requires.  If the mere act of posting records online could trigger a mandatory legal obligation under FOIA, thereby preventing the agency from ever revisiting the decision, agencies would likely become more circumspect and reluctant to engage in the proactive disclosures.  In any event, the argument is contrary to the plain language of § 552(a)(2)(D), which explicitly limits the disclosure obligations to records that have previously "been released" to a "person" under § 552(a)(3).  Records routinely and proactively posted on the internet in advance of any FOIA request for them clearly do not fit this description.

Finally, plaintiffs also suggest that the agency has, in the past, conceded that § 552(a)(2)(D) legally requires the records to be posted on the agency website, citing statements in the 2009 letter discussed above.  Even if such a concession could be found in the 2009 letter, it would have no bearing here.  Whatever the agency's past beliefs may have been about its obligations to make records available under § 552(a)(2)(D), those beliefs would not – and could not – have changed the scope of the agency's *actual* legal obligations under the statutory provision.[5]  In any event, as discussed above, the 2009 letter makes no such concession.  To the

---

[5] Defendant acknowledges that certain agency officials have, in the past, understood the agency's obligations under § 552(a)(2)(D) to sweep more broadly.  For example, the administrative record submitted in the *HSUS* case, discussed above, contains various materials suggesting that some agency officials understood § 552(a)(2)(D) to apply to records without regard to whether those records had been previously released in response to a request.  *See HSUS*, 1:05-cv-00197, ECF No. 72-2 (Oct. 1, 2008).  That view of the provision was (and is) inconsistent with the statutory language, as discussed above, and with guidance issued around that time by the Department of Justice's Office of Information Policy ("OIP"), which is responsible for overseeing agency compliance with FOIA.  In 2003, OIP sought to correct misperceptions about the scope of § 552(a)(2)(D) and issued guidance clarifying that the provision "does not even come into play until an agency processes and discloses records under the Act in the first place."  U.S. Dep't of Justice, FOIA Post (2003): FOIA Counselor Q&A: "Frequently Requested" Records, https://go.usa.gov/x5kby (further explaining that if agencies post records before receiving "even a first FOIA request," then the posting is essentially "discretionary," and cautioning agencies not to "confuse it with action taken under subsection (a)(2)(D)" (last visited Apr. 24, 2017)).

contrary, it indicated that the agency had been making records publicly available proactively, even though it was *not* legally required to do so under FOIA, and that it would strive to continue doing the same in the future.

Having failed to identify any disclosure obligation under FOIA that is even potentially applicable to the categories of records they seek, plaintiffs cannot invoke this Court's jurisdiction under § 552(a)(4)(B), and their claim should be dismissed.

## II.     Plaintiffs Do Not Claim to Have Submitted a Proper FOIA Request, or to Have Exhausted Their Remedies With Respect to Such Request

Even if the previously-posted records (and similar "future" records) were subject to an ongoing, mandatory disclosure obligation under § 552(a)(2)(D), Plaintiffs do not allege that they submitted a proper request for such records, which is a prerequisite to this Court's jurisdiction under § 552(a)(4)(B).  As a result, Plaintiffs' claim should be dismissed.  *See id.*

Plaintiff is incorrect to suggest that they need not submit a FOIA request prior to bringing suit to enforce § 552(a)(2).  It is well-settled that such a request is a prerequisite to seeking judicial review under FOIA, even when plaintiffs are seeking to enforce the agency's affirmative disclosure obligations under the statute.  *See, e.g.*, *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) (rejecting claim for records under § 552(a)(2) because plaintiff had not submitted a FOIA request for identifiable records under either § 552(a)(2) or 552(a)(3)); *Citizens for Responsibility and Ethics in Wash.* ("*CREW*") *v. U.S. Dep't of Justice*, 164 F.Supp.3d 145, 154 (D.D.C. 2016) (explaining that *Irons* "stands for the proposition" that § 552(a)(2) can be enforced by submitting a request under either § 552(a)(3) or "directly under Section 552(a)(2), so long as the request, like those made under Section 552(a)(3), is for 'identifiable' records"), *affirmed*, 846 F.3d 1235 (D.C. Cir. 2017).

16

Recent D.C. Circuit decisions reaffirm this point. *See CREW*, 846 F.3d at 1240–41 (quoting with approval *Irons*'s statement that categories of records "referred to in Section 552(a)(2), *when properly requested*, are required to be made available, and such requirement is judicially enforceable without further identification under Section 552(a)(3), even though the agency has failed to make them available as required by Section 552(a)(2)") (emphasis added).[6] Indeed, the D.C. Circuit has recently emphasized that in each case in which a plaintiff invoked § 522(a)(2), "the plaintiff made a request of the agency and the agency denied the request." *Prisology, Inc. v. Federal Bureau of Prisons*, No. 15-cv-5003, --- F.3d ----, 2017 WL 1228576, at *2 (D.C. Cir. Apr. 4, 2017). In *Prisology*, the court even implied that Article III standing could be called into question based on the absence of a request and denial. *See id.* ("Even if we inferred an injury to [plaintiff] from the Bureau's alleged failure to publish its records electronically, this would not differentiate [plaintiff] from the public at large. All that inference would reveal is a harm common to everyone, a harm of the sort [the Supreme Court] described as not stating an Article III case or controversy").

The requirement to submit a request before filing suit to enforce § 552(a)(2) arises from FOIA's plain language. As the D.C. Circuit has explained, § 552(a)(4)(B) applies to all three of FOIA's access provisions and provides redress for records "'improperly withheld *from the*

---

[6] While the *CREW* decision contemplated that in "a rare instance of agency delinquency in meeting its duties under the reading-room provision," the court could award relief applicable to records that have not yet been requested, the court did not suggest that a plaintiff could initiate FOIA litigation without ever making a FOIA request. *See id.* at 1246. To the contrary, by citing and quoting with approval its own prior decision in *Irons*, the D.C. Circuit reiterated that § 552(a)(2) is "judicially enforceable" only when the disputed records are "properly requested." *Id.* at 1240-41. The "agency delinquency" to which the court referred was an agency's intentional refusal to respond properly to repeated FOIA requests. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

*complainant*,' not agency records withheld from the *public*." *Kennecott Utah Copper Corp.*, 88

F.3d at 1203 (emphasis in the original).  *See also Banks v. Lappin*, 539 F. Supp. 2d 228, 235

(D.D.C. 2008) ("It cannot be said that an agency improperly withheld records if the agency did

not receive a request for those records.").  Moreover, the statute explicitly contemplates the

submission of requests under all three of FOIA's access provisions – including the affirmative

disclosure provision, § 552(a)(2) – and spells out procedures for exhausting administrative

remedies with respect to each such request.  *See* 5 U.S.C. § 552(a)(6)(A) (setting forth time

limits applicable to any "request for records made under" §§ 552(a)(1), (2) or (3)).  *See also id.* §

552(a)(6)(C)(i) ("Any person making a request to any agency for records under [§§ 552(a)(1),

(2) or (3)] shall be deemed to have exhausted his administrative remedies with respect to such

request if the agency fails to comply with the applicable time limit provisions of this

paragraph.").

       Indeed, having failed to tie their claim in this suit to a properly submitted FOIA request,

Plaintiffs also cannot show that they properly exhausted their administrative remedies with

respect to any such request prior to bringing suit.  This failure to exhaust constitutes a separate

and independent ground for dismissing the case.  *See Oglesby v. U.S. Dept. of Army*, 920 F.2d

57, 61–62 (D.C. Cir. 1990) ("Courts have consistently confirmed that the FOIA requires

exhaustion of this appeal process before an individual may seek relief in the courts.").

       Of course, the central premise of plaintiffs' complaint is that they should not be required

to file a FOIA request or exhaust remedies because they seek relief under an affirmative

disclosure provision, § 552(a)(2), and because doing so is too time-consuming.  But that position

is foreclosed by FOIA's plain language and the controlling precedent of this Circuit.  In any

event, the hardship of which Plaintiff's complain is nothing more than what all others seeking

access to agency records must endure.  Notably, while plaintiffs' complain about the prospect of lengthy delays, Congress anticipated and addressed such problems in the statute, allowing requesters to file suit immediately if their requests and/or administrative appeals are left unaddressed for more than 20 working days.  5 U.S.C. §§ 552(a)(6)(A)(i) & (ii), (C)(i).  Indeed, Congress went even further, allowing requesters to seek expedited processing if there are sufficiently compelling reasons why their particular requests should be prioritized over the requests of others.  5 U.S.C. § 552(a)(6)(E).  If plaintiffs believe they qualify for such prioritized treatment, they should seek it through the proper channels, and should do so before bringing suit.

Ultimately, Plaintiffs are asking the Court to allow them to bypass Congress's prescribed process altogether and jump to the front of the line -- ahead of other FOIA requesters who (unlike Plaintiffs) have properly submitted a FOIA request and undertaken to exhaust their administrative remedies as Congress prescribed.  *See* 7 C.F.R. § 1.8(d) (stating that requests are processed on a "first-in, first-out" basis); *Morales v. Secretary, U.S. Dep't of State*, No. 16-cv-1333, 2016 WL 6304654, at *4 (D.D.C. Oct. 27, 2016) (stating that relief on plaintiff's FOIA request "would harm others waiting for their FOIA requests to be processed, and would erode the proper functioning of the FOIA system.").  Even if such relief were authorized under FOIA, which it is not, it would make no sense to grant it here.  The agency is already engaged in a review process designed to ensure records removed from the website will be reposted to the extent possible, and that ongoing process has already resulted in thousands of the records being made available to the public once again.

III.    **Even If Plaintiffs Had Satisfied FOIA's Jurisdictional Prerequisites, Their Claim Would Not Be Ripe for Review**

For similar reasons, plaintiffs' FOIA claim does not present a ripe controversy fit for judicial review.  This Court cannot reach the merits of a claim unless it is "constitutionally and prudentially ripe." *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (quoting *Louisiana Envtl. Action Network v. Browner*, 87 F.3d 1379, 1381 (D.C. Cir. 1996)).  Determining prudential ripeness "requir[es] [a court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).  "A controversy is ripe when a plaintiff is challenging a final agency action, the issue poses purely legal questions and plaintiff has demonstrated hardship absent review." *Long v. Bureau of Alcohol, Tobacco and Firearms*, 964 F. Supp. 494, 498 (D.D.C. 1997) (finding that the issue of plaintiffs' requester status with regard to future requests not ripe absent pending FOIA fee waiver request).  Plaintiffs' FOIA claim meets none of these prerequisites, and thus should be dismissed on ripeness grounds under Rule 12(b)(6).

First, the decision challenged – to remove records from the website – is not sufficiently final with respect to the materials posted there.  To be considered "final," agency action must: (1) "marks the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted).  The decision challenged here meets neither requirement.  It was certainly not the "consummation" of the agency's decision-making process with respect to what will information be posted on the website.  The agency has made clear that it was simply a cautionary measure to protect personal privacy information,

while the agency continues the ongoing review process to determine what should be reposted on the website and in what form. Indeed, since initially removing the records on February 3, the agency has already re-posted many of those same records online. Nor did the temporary removal determine Plaintiffs' legal rights or obligations with respect to the records. Plaintiffs assert that the action made it more difficult for them to access the same records (they must either file a FOIA request for the same records or obtain them from a source other than the agency) but that is a practical consequence, not a legal one. *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731–32 (D.C. Cir. 2003) (distinguishing between legal and practical consequences, and making clear that only the former matters for purposes of determining whether agency action is final).

The lack of final agency action here is, in itself, sufficient basis to find that the case is not ripe. "The interest in postponing review is strong if the agency position whose validity is in issue is not in fact the agency's final position" *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 841 (D.C. Cir. 1985) (citation omitted). "Courts decline to review 'tentative' agency positions because doing so 'severely compromises the interests' the ripeness doctrine protects." *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). *See also Nevada v. Dep' of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) (stating that final agency action is a "crucial prerequisite to ripeness") (citation omitted); *Holistic Candlers and Consumers Ass'n v. FDA*, 664 F.3d 940, 943 n. 4 (D.C. Cir. 2012) (concluding that because challenged decision was not final, it was unnecessary to consider other ripeness factors).

In any case, other ripeness factors only reinforce the conclusion that plaintiffs' claim is not fit for judicial review. Plaintiffs' claim for relief does not involve "purely legal" issues. As explained above, the applicability of § 552(a)(2)(D) turns on factual questions about whether

particular records were "previously released" to a person in response to a specific FOIA request under § 552(a)(3), and whether those same records or "substantially the same" records have been or likely will be requested three or more times.  Plaintiffs' complaint largely ignores these issues, incorrectly asserting that § 552(a)(2)(D) applies categorically to all records routinely made available on the agency website.  And even if a mandatory disclosure obligation could be established, the scope of any such obligation would still be subject to FOIA's nine statutory exemptions.   Thus, before the Court could order any disclosure, the parties would need to litigate the factual bases for any exemption claims by the agency.

Moreover, any attempt to resolve those factual issues on this complaint would be judicially unmanageable, and consideration of them would clearly "benefit from a more concrete setting . . . ."  *Am. Petrol. Inst.*, 683 F.3d at 387.  The universe of records at issue in this case is vast, ill-defined, and ever-changing.  Plaintiffs seek disclosure for all records that were removed from the agency website on February 3, which by Plaintiffs own estimation includes "thousands" of records that were posted over the course of "many years."  Compl. ¶ 1.  And plaintiffs also seek *ongoing* disclosure of all "similar" records that the agency obtains or generates in the future.  Compl. ¶¶ 1, 37(3).  While the universe of disputed records expands with the creation and acquisition of new records, it simultaneously contracts as the agency's ongoing review process results in disputed records being reposted on the agency website, thereby rendering moot any claim for relief with respect to such records.  Trying to resolve the factual issues raised by plaintiffs' claim would be exceedingly difficult in these circumstances, and would in any event require judicial review that is largely duplicative of (and disruptive of) the ongoing review process that is already underway at the agency.

At the very least, judicial review of such issues would be more manageable in the context of a specific FOIA request.  Indeed, courts "routinely" dismiss on ripeness grounds where, as here, FOIA-related claims are not tied to a particular request for identifiable records, and thus would benefit from the more concrete setting and factual development that such a request would likely provide.  *See Gulf Oil Corp.*, 778 F.2d at 842 (declining to issue broad relief with respect to "similar" documents in the absence of a particular FOIA request).  *See also Webb v. HHS*, 696 F.2d 101, 106–08 (D.C. Cir. 1982) (finding that challenge to the applicability of regulation governing disclosures by Food and Drug Administration not ripe for judicial review absent particularized FOIA request); *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 971–73 (D.C. Cir. 1980) (explaining that the status of subpoenaed documents as "agency records" or "trade secrets" not ripe for determination by agency or by court absent FOIA request); *FTC v. Anderson*, 631 F.2d 741, 748–49 (D.C. Cir. 1979) ("further factual development" that would be provided by a FOIA request for specific documents necessary to determine if confidential documents are "agency records").  "Without a specific request at issue, [plaintiffs'] claim becomes a 'generalized challenge' which would be on a 'much surer footing in the context of a specific application.'"  *Gulf Oil Corp.*, 778 F.2d at 842 (citation omitted).

Since the FOIA claim is not fit for judicial review, there is no need to consider hardship to plaintiffs of delayed review.  *Holistic*, 664 F.3d at 943 n. 4 (stating that a dispute is not ripe if it is not fit for judicial review).  In any event, plaintiffs would suffer no cognizable hardship from delayed review.  Again, the agency has already reposted many thousands of these records to the website as a result of its ongoing review process, and has stated that it will continue to do so consistent with the need to preserve personal privacy.  Plaintiffs remain free to file a FOIA request for any records they still feel they need and to then seek judicial review if they are

dissatisfied with the response.  Plaintiffs complain that FOIA requests take too long.  As discussed previously, however, Congress anticipated and addressed this problem, allowing requesters to file suit immediately if their requests and/or administrative appeals are left unaddressed for more than 20 working days.  In any event, it cannot be "hardship" to do what FOIA requires, and what other requesters must do when they seek records from the government.  Plaintiffs' unwillingness to file a suit based on a properly filed FOIA request is clearly not a cognizable "hardship" for purposes of the ripeness inquiry.  *See Gulf Oil Corp*., 778 F.2d at 842 ("The burden of having to file another suit is hardly the type of hardship which warrants immediate consideration of an issue presented in an abstract form." (citation omitted))

## CONCLUSION

Accordingly, defendant respectfully asks the Court to dismiss plaintiffs' complaint.

Dated:  April 24, 2017                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

MARCIA BERMAN
Assistant Branch Director
Civil Division

 _/s/ Peter M. Bryce____ _____
PETER M. BRYCE
(IL Bar No. 6244216)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Room 7138
Washington, D.C. 20530
Tel: (202) 616-8335
Fax: (202) 616-8470
E-mail: peter.bryce@usdoj.gov
Attorney for Defendant