UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, et al. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civ. No. 17-269 (CRC)

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR LEAVE TO TAKE DISCOVERY**

**Introduction**

Contrary to what Defendants would have this Court believe, there is nothing that *prohibits* this Court from allowing Plaintiffs to take discovery at this juncture in the litigation, especially given that this is a case challenging an agency's failure to comply with its affirmative disclosure requirements. *See*, *e.g.*, *Cummock v. Gore*, 180 F.3d 282, 293 (D.C. Cir. 1999) (directing the district court to "engage in the necessary discovery" to resolve an affirmative disclosure claim under the Federal Advisory Committee Act); *see also Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) ("the district court has 'broad discretion to manage the scope of discovery' in FOIA cases") (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). As further demonstrated below, Plaintiffs should be allowed to take discovery for several reasons—none of which was at issue at this juncture in any of the FOIA-request litigation cited by Defendants United States Department of Agriculture ("USDA") and its Animal and Plant Health Inspection Service ("APHIS") in their opposition.

Moreover, Defendants chose to significantly delay resolution of this case by moving to dismiss it on bogus jurisdictional grounds rather than moving for summary judgment on the merits. *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss, Docket No. 19. Defendants should not be allowed to further delay a final resolution by demanding that Plaintiffs wait until Defendants move for summary judgment at some point in the future and submit declarations before Plaintiffs may even begin to collect additional information demonstrating that Defendants have violated the affirmative disclosure requirements of FOIA. After being posted for almost a decade, the vast majority of the information Plaintiffs seek—and which they rely on heavily in their daily work, Complaint ¶¶ 4-9—has been missing from the agency's Reading Room *for over four months already.* Under these circumstances, as well as those discussed below, it is simply unfair to make Plaintiffs defer to Defendants' choice of litigation strategy, rather than allowing Plaintiffs to take limited discovery requested so that they may move forward with presenting *their* case to the Court.[1]

### A. The Cases Relied On By Defendants Do Not Apply To Challenges To An Agency's Failure To Comply With Its Affirmative Disclosure Obligations Under FOIA.

To begin with, none of the cases upon which Defendants rely applies to a case like this one—which does *not* involve a request for information under FOIA that has been denied. Rather, this case challenges the USDA's failure to comply with its *affirmative disclosure obligations*, which, also contrary to Defendants' assertions, Defendants' Opposition at 6, do *not* require Plaintiff to exhaust any administrative remedies before they may bring suit. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1240 (D.C. Cir. 2017)

---

[1] Plaintiffs have already submitted Exhibits A-C in support of their motion for leave to take discovery. With this reply, they are submitting additional Exhibits D - J.

("*CREW*") ("Equally certain under our case law, *a plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3).*" (emphasis added)).

As the Court of Appeals for this Circuit has previously recognized, this kind of case should be approached like one brought under the affirmative disclosure requirements of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. 2 §§ 1-16, which provides that subject to the exemptions provided by FOIA:

> the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee, shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports . . .

FACA, §10(b). As the Court of Appeals long ago explained in *Food Chemical News v. Department of Health & Human Services*, 980 F.2d 1468, 1472 (D.C. Cir. 1992), "[t]he language of section 10(b) [of FACA] *mirrors that of section 552(a)(2) of FOIA*, which states: 'Each agency . . . shall make available for public inspection and copying . . . .' 5 U.S.C. § 552(a)(2)"— the same provision at issue in this case. (emphasis added). As the Court of Appeals further explained, "[d]isclosure of section 552(a)(2) materials *clearly does not require a FOIA request. . . .*" *Id.* (emphasis added). Thus, as the Court summarized, *"[l]ike section 552(a)(2), section 10(b) affirmatively obligates the Government to provide access to the identified materials, regardless of whether a FOIA request has been filed.*" *Id.* (emphasis added).

Because Plaintiffs' claim here must be analyzed *differently* than one involving a challenge to an agency's withholding of information that has been requested under section 552(a)(3) of FOIA, the discovery cases relied on by Defendants also do not apply. Rather, where records that must be affirmatively disclosed to the public under section 552(a)(2) have

3

been omitted from an agency's Reading Room—as here—the district court may permit discovery to uncover the basis for the agency's failure to abide by its affirmative disclosure obligations and the extent to which materials that have been withheld from the public must in fact be affirmatively disclosed pursuant to that mandate. *See, e.g.*, *Cummock,*, 180 F.3d at 292 ("the District Court *must engage in the necessary discovery and fact finding to determine whether any additional materials fall within the parameters of information to which [the plaintiff] is entitled*.") (emphasis added).[2]

Therefore, there is no need for Plaintiffs—or this Court—to wait for Defendants to move for summary judgment before Plaintiffs may be permitted to take discovery concerning the basis for the new Administration's decision to remove thousands of previously routinely disclosed information from its Electronic Reading Room, especially when, as discussed below, the reasons *publicly* provided by the USDA make no sense and are completely at odds with the USDA's longstanding practice and pronouncements under prior Administrations.

**B.     Plaintiffs Should Be Allowed To Take Discovery To Challenge Inconsistent Positions Taken By Defendants On Critical Matters At Issue In The Case.**

The reason provided the public by Defendants for removing information that for years had been routinely posted in the agency's Electronic Reading Room are illogical for two reasons. First, APHIS's assertion that it needed to suddenly remove whole categories of information from its Reading Room to potentially protect "certain personal information," *see* APHIS Announcement, Plaintiffs' Exhibit A, Docket No. 12-1, cannot be squared with the fact that the agency has always had the ability to—and indeed *did*—remove personal information and any

---

[2] Although the plaintiff in *Cummock* was a member of the advisory committee at issue, the Court made clear that her rights to enforce the affirmative disclosure requirements were at least the same as those of the public.  *See* 180 F.3d at 292 ("Cummock clearly possesses an enforceable right under FACA, because any member of the public possesses such a right").

other information it believed was exempt from disclosure before posting records in its Reading Room. *See* Complaint ¶ 21; *see also e.g.*, Inspection Reports (attached as Pl. Ex. D) (redacting personal information).[3]

Second, because prior Administrations had already officially posted all of the information that was available as of February 3, 2017—when the new Administration abruptly removed it from the Reading Room—the USDA simply may not continue to withhold any such information from the public. It is well settled that having made the decision to release the particular information publicly, an agency loses its ability to claim that any such information is exempt from disclosure. *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (an agency may not withhold under FOIA information that it has already officially disclosed); *Niagara Mohawk Power Corp. v. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) (same). Therefore, Defendants' contention that the USDA removed this information to protect some un-named individuals' personal privacy does not withstand scrutiny, and Plaintiffs seek to take limited discovery to obtain additional evidence demonstrating that fact. *Cf*, *e.g.*, *Carney v. U. S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (discovery allowed in FOIA-request litigation where there is evidence of agency bad faith).[4]

---

[3] Plaintiff Winders has been unsuccessful in trying to shed additional light on this matter through her February 3, 2017 expedited FOIA request for information regarding the agency's decision to remove the information at issue from the Electronic Reading Room. She has yet to receive any records from APHIS in response to that request, and the USDA Office of General Counsel redacted *all* responsive information from its initial response. *See* Pl. Ex. E.

[4] The fact that all of this information was already disclosed by Defendants also seriously undermines the USDA's plea to dismiss this case on "prudential ripeness" grounds. Defendants' Memorandum in Support of its Motion to Dismiss, Docket No. 13 ("Def. MTD") at 20-23. Because the agency may not continue to withhold any of the information that was on its public website on February 3, 2017, there is no reason to further delay Plaintiffs' access to that information while the agency reconsiders which of that information it may repost, *id.*, especially when Defendants contend that all such posting is being done purely as an exercise of *discretion*,

Likewise, Defendants have now made demonstrably inconsistent statements to the public and this Court about their obligations to post the information at issue in its Electronic Reading Room—including the information that was already posted as of February 3, 2017, and any similar information the USDA has generated or received since that date which must also be affirmatively disclosed under FOIA. Thus, although Defendants insist to this Court in their motion to dismiss that the USDA was never required to post any of that information, and instead did so only as an exercise of *discretion*, Def. MTD, Docket No. 13, at 1-2, 6, 13-14, in fact, the limited record available to Plaintiffs demonstrates otherwise.

FOIA's affirmative disclosure mandate requires all federal agencies to provide certain records to the public as a whole without any individual requests for such records. *Id.* § 552(a)(2). *CREW,* 846 F.3d at 1240. Pursuant to that mandate, "[e]ach agency, in accordance with published rules, shall make available for public inspection in an electronic format" certain types of records including

> (1) "final opinions . . . as well as orders, made in the adjudication of cases"; (2) "copies of all records, regardless of form of format[,]" that have already been released to any person under the Act and which, "*because of the nature of the subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records*;" and (3) a general index of the latter category of records.

*Id.* § 552(a)(2) (emphasis added).

The USDA's implementing regulations in turn provide that in determining whether records must be affirmatively disclosed because they "have become or are likely to become the subject of subsequent requests for substantially the same records," the agency "shall" consider the following factors:

---

which means that the USDA can take it down again at any time. *See also* Winders Dec. ¶¶ 28-29, 33 (detailing all the information that remains missing from the Reading Room).

6

>   (1) previous experience with *similar records*; (2) the particular characteristics of the records involved, including their *nature and the type of information contained in them*; and (3) the identity and number of requesters and whether there is widespread media, historical, academic, or commercial interest in the records.

7 C.F.R. § 1.4(a)(4)(i)–(iii) (emphases added).

In 1996, Congress amended FOIA to require agencies to make all records subject to the affirmative disclosure requirements available to the public by electronic means, 5 U.S.C. § 552(a)(2), and in 2016 Congress further amended FOIA to make clear that the affirmative disclosure mandate applies with respect to records that have been released under the Act to any person and "*have been requested 3 or more times*." 5 U.S.C. § 552(a)(2)(D)(ii)(II) (emphasis added).

The USDA has long construed these requirements as *requiring* it to affirmatively disclose the *categories* of information at issue here—i.e., inspection reports, research facility annual reports, regulatory correspondence, enforcement records, and lists of entities licensed under the Animal Welfare Act, Complaint ¶ 1—because "the nature of their subject matter," 7 C.F.R. § 1.4(a)(4), has led the agency to "determine[]" that these *categories* of records "are likely to become the subject of subsequent requests for substantially the same records." 5 U.S.C. § 552(a)(2)(D)(ii)(I). Indeed, as shown above, the agency's own implementing regulations require it to affirmatively disclose records based on its "previous experience with *similar records*," and "the particular characteristics of the records involved, including the *nature and type of information contained in them*." 7 C.F.R. § 1.4(a)(4)(i)-(ii) (emphases added).

Thus, the USDA's "FOIA Reading Room" website has long explained—and *still* states—that "[t]he FOIA Electronic Reading Room contains documents specifically identified for inclusion by the FOIA, as well as documents for which we have received multiple FOIA

requests." USDA Freedom of Information Act (FOIA) Reading Room (Pl. Ex. F).[5] It further states that "[t]he documents that are *required to be made available by the FOIA*" include "records that have been released in response to multiple written requests for information under FOIA *or are likely to be requested again*," *id.* (emphases added), and, under the heading "Animal Welfare" lists the following *categories* of records that are available through the Electronic Reading Room:

- Enforcement Actions

- Search Active Licensees, Registered Facilities, Annual Reports, and Inspection Reports

- Annual Reports  - Research Facilities; and

- Regulated Businesses (Licensing and Registration)

*Id.*

As to inspection reports—thousands of which continue to be omitted from the Reading Room, *see* Declaration of Delcianna Winders ("Winders Decl."), Docket No. 19-2, ¶ 29—the USDA has not only consistently informed the public that such records were required to be electronically posted pursuant to the E-FOIA requirements, *see, e.g.*, Website, Pl. Ex. F, but the USDA's internal records demonstrate that the agency's own officials and legal counsel had reached this same conclusion. *See* Memorandum from Chester A. Gipson, Deputy Administrator of Animal Care for APHIS to Kenneth Cohen, Assistant General Counsel (April 18, 2003), Pl. Ex. F ("Prior to September 11, 2001, AC and FOI *determined that AC [Animal Care] inspection reports and annual reports qualified as 'reading room' records because of the high interest from animal interest groups as well as the general public*.") (emphasis added); Memorandum from the

---

[5] https://www.aphis.usda.gov/aphis/resources/foia/ct_foia_reading_room (last visited May 26, 2017).

Assistant General Counsel (March 12, 2004), Pl. Ex. C ("I conclude that *the AC reports qualify as records subject to multiple requests under E-FOIA and must be made available to the public via electronic means* unless there is an applicable exemption from disclosure under FOIA.") (Emphasis added).

Likewise, in a 2009 Power Point presentation, Kathleen Garland, Director of APHIS's Western Region, explained that "Inspection Reports" were posted on-line as "*Required by E-FOIA Amendments to Freedom of Information Act*." *See* USDA APHIS Animal Care Update (2009), Pl. Ex. H at 7 (emphasis added); *see also* USDA Animal Care Report (Sept. 2008) at 29 (Pl. Ex. I) (reporting that "many" of the "more than 650 requests for information" received by the agency "were for copies of the reports generated after inspections of facilities licensed or registered under the AWA" and that "[t]o assist in making these documents more readily available to the public *in accordance with the Electronic Freedom of Information (E-FOIA) Act of 1996*, APHIS has made many frequently requested inspection reports available on AC's Web page, along with annual reports from research facilities" (emphasis added)).

As demonstrated, the USDA has also previously determined that "annual reports" are a category of records that "qualify as records subject to multiple requests under E-FOIA and must be made available to the public." *See* Pl. Exhs. C, F. And the agency has also previously informed the media that "enforcement records," including "[Form] 7060s [warning letters], complaints, decisions and orders, and stipulations" must be disclosed under E-FOIA. *See* Letter from Tonya Woods, Director USDA FOIA Office, to James Shiffer, Star Tribune (January 23, 2015), Pl. Ex. J (stating that such records "*are frequently requested*" and, that *"as a result, APHIS, in compliance with the Electronic Freedom of Information Act Amendments of 1996,*

9

*made the determination to provide the requested records on its agency website*." (emphases added)).

Accordingly, contrary to what the agency would have this Court believe—i.e., that all these years it has been routinely disclosing the information at issue not because it is *required* to do so by the E-FOIA affirmative disclosure requirements and the agency's own implementing regulations, but simply as a matter of *discretion*, the record currently available to Plaintiffs reveals otherwise. Although Plaintiffs have managed to collect substantial evidence demonstrating this point, they wish to take discovery—including requests for admissions from Defendants—further demonstrating that for years APHIS has concluded that it is *required* by the 1996 E-FOIA Amendments to disclose this information in its Electronic Reading Room.

Given the dramatic inconsistencies between the agency's *litigation* position on this point and its prior public and internal pronouncements, the Court need not wait for agency declarations reiterating the same inconsistencies before allowing Plaintiffs to obtain additional evidence that is solely in the possession of Defendants to further demonstrate the correctness of Plaintiffs' legal position. *Cummock v. Gore*, 180 F.3d at 293; *see also Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (discovery allowed in FOIA case when faced with "conflicting evidence" regarding the adequacy of the agency's search for responsive records) (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368-70 (D.C. Cir. 1980)); *In Def. of Animals v. U. S. Dep't of Agric.*, 656 F. Supp.2d 68 (D.D.C. 2009) (discovery and trial held in FOIA case involving disputed issues of material fact).

    **C.**    **Plaintiffs Should Be Allowed To Take Discovery To Further Rebut Defendants' Argument That The Court Lacks Jurisdiction Over This Case.**

Similarly, although Defendants insist that this Court lacks jurisdiction over Plaintiffs' affirmative disclosure claim because, according to Defendants, Plaintiffs have not adequately

alleged—and will be unable to prove—that Defendants have "released" any of this information as required to trigger the affirmative disclosure mandate, Def. MTD at 12-14, the available evidence shows otherwise.

As a preliminary matter, prior to February 3, 2017, when the information at issue in this case was removed from the agency's Electronic Reading Room, *all* of this information had already been "released" to the public pursuant to FOIA. *See, e.g.*, Agency Reading Room Website (Pl. Ex. F); *see also* Winders Decl. ¶ 21.

> The affirmative disclosure provision of the E-FOIA Amendments provides that:
>
> [e]ach agency, in accordance with published rules, shall make available for public inspection in an electronic format . . . copies of all records, regardless of form or format . . . that have been *released to any person under paragraph (3)*; and that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or that have been requested 3 or more times; and (E) a general index of the records referred to under subparagraph (D); unless the materials are promptly published and copies offered for sale.

5 U.S.C. § 552(a)(2) (emphasis added). Paragraph 3 in turn provides that:

> each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall *make the records promptly available to any person*. (B) In *making any record available to a person under this paragraph, an agency shall provide the record*. . . .

*Id.* § 552(a)(3) (emphases added). Therefore, the term "released to any person under paragraph 3" includes making the record "available" to a person. *Id.*

Here, for years the USDA has made all of the information at issue "available" by routinely posting it in the agency's Electronic Reading Room. Accordingly, there can be no serious doubt that all such records have already been "released" to Plaintiffs, along with the rest of the public. In fact, the USDA's own official responsible for making the decision to remove the information from the FOIA Electronic Reading Room recently made clear that the agency has

11

been referring requesters to the Reading Room to obtain information requested under FOIA. *See* Declaration of Kevin Shea, *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, Civ. No. 3:17-00949 (N.D. Cal. Apr. 26, 2017), ECF No. 22-1, at ¶ 17 (explaining that the agency was "proactively posting" information "without waiting for a specific FOIA request," and that "[l]ater, if posted information was responsive to specific FOIA requests, *APHIS generally referred requesters to the website, rather than processing and releasing records already available on the agency website*.") (emphasis added)). The information to which he specifically refers includes "inspection reports and research facility annual reports," as well as "regulatory correspondence (such as official warnings) and enforcement information including pre-litigation settlement agreements, administrative complaints, and decisions and orders issued by ALJs and Judicial Officers (consent decisions and orders, default decisions, initial decisions and orders, final decision and orders, and dismissal orders)," *id.* ¶¶ 14-17—i.e., the *same information* that is at issue in this case.

In other words, the USDA was making records "available" to FOIA requesters, 5 U.S.C. § 552(a)(3)(B), by sending them to the agency's Electronic FOIA Reading Room. *See also* Pl. Ex. J (USDA directing reporter requester to the Reading Room to obtain requested information); Winders Decl. ¶¶ 18-19. Accordingly, as demonstrated by these admissions, the agency has already "released" this information pursuant to FOIA *by posting it on its website*—a method that is commonly used by agencies to "release" information pursuant to a FOIA request. *See, e.g.*, *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 783 F.3d 1340, 1344 (D.C. Cir. 2015) (noting that State Department would make requested records "available to the public *by posting them on a State Department website*." (emphasis added)); *Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 92, 97 (D.D.C. 2011) (FBI would comply with FOIA request by releasing

information "to the public *on the FBI's public website*" (emphasis added)); *Appleton v. Food & Drug Admin.*, 451 F. Supp. 2d 129, 135 (D.D.C. 2006) (Food and Drug Administration produced records requested under FOIA by indicating that requested information "was *available on the FDA's website*" (emphasis added)). Indeed, because the USDA has for years been posting this information in its Electronic Reading Room—and directing requesters for such information to that website—Plaintiffs and others who rely on such information had no *need* to submit individual requests for such information. *See* Winders Decl. ¶¶ 18-19.

Therefore, as shown above, all information at issue here has already been "released" within the meaning of 5 U.S.C. § 552(a)(2)(D)(i). And, to the extent any question remains on this issue, Plaintiffs should be permitted to take discovery—because the agency is solely in the possession of any *additional* evidence bearing on this jurisdictional point. *See, e.g.*, *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) (plaintiffs must be "given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion"). Further, each category of information at issue has also been "requested 3 or more times," 5 U.S.C. § 552(a)(2)(D)(ii)(II), and hence, pursuant to the 2016 E-FOIA Amendments, all non-exempt information must be affirmatively disclosed. *Id.*; *see also* Winders Dec. ¶¶ 36–49, 52, and Attachments C–J.[6]

In any event, because, again, Defendants are solely in possession of additional evidence that will shed light on these issues—i.e., whether the information has been "released" and "requested 3 or more times," 5 U.S.C. § 552(a)(2)—Plaintiffs should be allowed to take

---

[6] In an additional effort to obtain information on this point, Plaintiff Winders submitted a FOIA request to the agency for copies of the *logs* of the FOIA requests it has received since January 1, 2017—information that until this year the agency also routinely posted in its FOIA Electronic Reading Room. *See Winders Decl.* ¶ 51. To date, Ms. Winders has received no such records. *Id.*

discovery to obtain it.  *Ignatiev*, 238 F.3d at 467. Indeed, although Plaintiffs have already provided ample grounds for denying Defendants' motion to dismiss this case, the Court certainly should not dismiss this case on any of the jurisdictional grounds urged by Defendants without allowing Plaintiffs to take discovery to obtain further evidence demonstrating that the Court has jurisdiction over their affirmative disclosure claim. *Id.*; *see also Watt v. Syrian Arab Republic*, 225 F.R.D. 1, 2 (D.D.C. 2004) ("There is no doubt that jurisdictional discovery is permissible in cases where the defendant challenges the factual basis of the court's subject-matter jurisdiction").

## **CONCLUSION**

For all of the foregoing reasons, as well as those set forth in Plaintiffs' motion for leave to take discovery, that motion should be granted.

Respectfully submitted,

\_\_/s/_____
Katherine A. Meyer
D.C. Bar No. 244301
Meyer Glitzenstein & Eubanks, LLP
4115 Wisconsin Ave., N.W. Suite 210
Washington, D.C.  20016
(202) 588-5206 (O)
(202) 588-5049 (fax)
kmeyer@meyerglitz.com

Date:   June 6, 2017