## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                          )
PEOPLE FOR THE ETHICAL TREATMENT          )
OF ANIMALS, INC., et al.,                 )
                                          )
                    Plaintiffs,           )
                                          )
          v.                              )         No. 1:17-cv-00269-CRC
                                          )
UNITED STATES DEPARTMENT OF               )
AGRICULTURE, et al.,                      )
                                          )
                    Defendants.           )
———————————————————————   )


## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

## INTRODUCTION

Plaintiffs' opposition brief does not refute the grounds for dismissal identified in the agency's motion to dismiss (the "Motion").  Plaintiffs allude to parallel litigation in a district court in California, which involves a similar Freedom of Information Act ("FOIA") challenge to the agency's temprorary removal of records.  In an opinion issued the day before plaintiffs filed their opposition brief, the district court in that case held, in the context of a request for preliminary injunctive relief, that plaintiffs there were unlikely to succeed on the merits because, *inter alia*, they had not exhausted their administrative remedies.  *See Animal Legal Def. Fund v. USDA*, No. 17-CV-00949-WHO, 2017 WL 2352009 (N.D. Cal. May 31, 2017) ("*ALDF*") (relying primarily on D.C. Circuit precedent).  For this and other reasons, this Court should likewise reject plaintiffs' claim here.

First, plaintiffs' claim that 5 U.S.C. § 552(a)(2)(D) creates a categorical legal obligation to publish all previously-posted records (as well as all "similar" records obtained or generated in the future) simply cannot be squared with the plain language of the provision.  Contrary to their argument, that provision is expressly limited to records that have already been processed and released in response to a FOIA request under § 552(a)(3), and does not apply to whole categories of records that the agency has routinely posted to its website in the absence of any FOIA request. Indeed, Congress included the limitation precisely because it intended to limit any disclosure obligation to records that the agency has already been *legally required* to process and produce under FOIA.  Plaintiffs make a number of arguments – all ultimately unpersuasive – urging the Court not to apply the statute as written, claiming, *inter alia*, that the agency has "already determined" the provision applies, that "equitable estoppel" bars the agency's postion, and that

plaintiffs should be allowed to take discovery rather than face dismissal.  Pls' Opp'n to Defs'

Motion to Dismiss ("Pl. Opp."), ECF No. 19.

Second, plaintiffs' complaint should be dismissed because they do not claim to have

submitted a proper FOIA request, or to have exhausted remedies with respect to such a request.

Plaintiffs' suggestion that they are not required to do so when bringing a claim under § 552(a)(2)

is again contrary to the plain language of the statute, as well as applicable D.C. Circuit precedent.

Indeed, that is precisely what the *ALDF* Court found in the parallel California litigation, when it

rejected the same arguments plaintiffs now make here.  *See ALDF*, 2017 WL 2352009, at \*7

(stating that "this court should not entertain plaintiffs' FOIA claims as they have not fully

complied with FOIA's administrative procedures" (citation omitted)).  The same conclusion is

warranted here, especially given the applicable, controlling D.C. Circuit precedent.

Finally, the complaint should be dismissed on ripeness grounds.  The agency has not yet

made a final determination about what records should be posted, and the Court should reject

plaintiffs' attempt to litigate that issue in the abstract, without even the context afforded by a

specific FOIA request.   Plaintiffs' response is largely without substance.  Their arguments about

finality are wrong.  And their assertion that this case involves "purely legal issues" also does not

advance their cause (though it does provide clear grounds to deny their requests for discovery).

Although the claim can certainly be dismissed on "purely legal" grounds, allowing plaintiffs'

claim to proceed would require the Court to resolve factual issues about a vast and indeterminate

universe of records that is constantly changing.  The claim is unripe and should be dismissed.

**ARGUMENT**

**I.     Plaintiffs Cannot Invoke the Court's Jurisdiction Under FOIA Because They Do Not Plausibly Allege that the Records Have Been "Improperly Withheld"**

As explained in the Motion, plaintiffs' claim that the records at issue have been "improperly withheld" under § 552(a)(2)(D) cannot be squared with the allegations in the complaint.  Contrary to their suggestion, the provision does not apply to whole categories of records that, by plaintiffs' own account, the agency has for many years "routinely" made available to the public without waiting for any FOIA request.  Rather, it requires disclosure only of records that meet two conditions: (1) they have already been processed and "released" in response to a specific FOIA request "under" § 552(a)(3), *see* § 552(a)(2)(D)(i); *and* (2) they have been or likely will be requested multiple times, in accordance with specified criteria, *see* § 552(a)(2)(D)(ii).  The categories of records plaintiffs seek do not even meet the threshold requirement in clause (i).  By plaintiffs own account, the previously-posted records were made available on the agency's website "routinely" for years because they fell into certain categories, not in response to particular FOIA requests.  Compl. ¶¶ 1, 31, ECF No. 1.  Plaintiffs' claim for "similar" records obtained or generated in the future highlights this defect, *id*. ¶¶ 1, 19, since it is not possible for such records to have yet been released in response to a FOIA request.

In response plaintiffs do not claim that the disputed categories of records have ever been released in response to a FOIA request under § 552(a)(3).   Plaintiffs do not even address the applicable statutory language until page 21 of their brief, at which point they argue that clause (i) does not really limit the provision to records that have been released in response to a FOIA request, and only requires that the records have been made "available" to a person for whatever reason.  *See*  Pl. Opp. 21-25.  Plaintiffs also make a series of arguments urging the Court to

3

ignore the statutory language, claiming that: (1) plaintiffs have adequately alleged an improper withholding; (2) the agency has "already determined" that § 552(a)(2)(D) requires posting of these categories of records; (3) equitable estoppel precludes the agency from relying on the language of § 552(a)(2)(D); and (4) plaintiffs should be allowed to take discovery in lieu of dismissal. These arguments are all meritless.

## A.  Plaintiffs' Reading of § 552(a)(2)(D) is Wrong and Should be Rejected

Plaintiffs eventually acknowledge that clause (i) of § 552(a)(2)(D) sets forth a threshold requirement for mandatory disclosure. They argue, however, that a record can be "released to any person under [§ 552(a)(3)]," within the meaning of clause (i), even though it was not released *in response to a FOIA request under § 552(a)(3)*. Pl. Opp. 21 (asserting that defendants are "incorrect" that § 552(a)(2)(D) applies only to records that are released "pursuant to an individual FOIA request"). According to plaintiffs, a record is "released to any person under [§ 552(a)(3)]," whenever it is made "available" to a person -- without regard to whether it was made available in response to a specific FOIA request or for some other reason. *Id*. In their view, the previously-posted records meet this requirement because they were made "available" to the public when they were posted on the agency website. The basis for plaintiffs' interpretation is apparently the fact that § 552(a)(3), where applicable, contemplates that the agency will make records "available" to requesters. *See id*. at 21-22 (emphasizing the use of the term "available" in § 552(a)(3)).

The central fallacy of plaintiffs' interpretation is that it ignores (a)(3)'s plain language that limits an agency's obligation to make records available to any person *who requests them under (a)(3)*. Pl. Opp. 21-22 (quoting 552(a)(3) as follows: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with

published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person . . .").  In addition, clause (i) of § 552(a)(2)(D) expressly limits that provision to records that have been released "under paragraph 3" of the FOIA, i.e., the paragraph setting forth the agency's obligation to respond to specific requests for records.  *See* 5 U.S.C. § 552(a)(3).  Thus, a record is released to a person "under" § 552(a)(3) only when the record in question has been released by the agency in response to a specific request submitted under that provision.  Plaintiffs' suggestion that a record satisfies clause (i) whenever it is made "available" to a person, regardless of how or why, is contrary to the plain language of § 552(a)(3) and (a)(2)(D).  It is also contrary to the legislative history, which likewise confirms that  § 552(a)(2)(D) applies only to records that have already been released in response to specific requests.  *See, e.g.*, S. Rep. No. 104-272, at 13 (1996) (noting that the provision applies to "records released *in response to FOIA requests* on a subject of popular interest," such as records of assassinations of famous public figures (emphasis added));  *id.* (emphasizing that some agencies are already taking steps to make available "in their reading rooms *materials released in response to specific requests under the FOIA*" (emphasis added)).

Plaintiffs' interpretation is also at odds with the broad claim for relief asserted in the complaint and reiterated in the Opposition.  That claim is not limited to records that were previously posted.  Plaintiffs also seek production of all "similar" records obtained or generated since the February 3 removal, as well as "similar" records obtained or generated in the "future."  Compl. ¶ 1; Pl. Opp. 1.  Since these latter two categories were not previously-posted on the website, they would not qualify for mandatory disclosure even under plaintiffs' own incorrect reading of § 552(a)(2)(D).  Nor could these records have been previously released in response to FOIA requests submitted under § 552(a)(3).

5

Where, as here, the agency makes whole categories of records available on the internet routinely, in the absence of any FOIA request, and without any legal obligation to do so under § 552(a)(3), it clearly has *not* released records "under" § 552(a)(3).  This point is addressed in guidance on the provision issued by the Department of Justice's Office of Information Policy ("OIP"), which explains that these sorts of proactive disclosures do not fall within the scope of the provision.  "Fundamentally," OIP explains, "this reading room provision does not even come into play until an agency processes and discloses records under the Act in the first place."  *See* FOIA Post (2003): FOIA Counselor Q&A: "Frequently Requested" Records ("FOIA Q&A"), https://go.usa.gov/xNfdP, (last visited June 28, 2017) (citing additional guidance noting that "this requirement by definition begins with the processing of records disclosed in response to a FOIA request").  Conversely, where agencies post records in their reading room before receiving "even a first FOIA request," as here, the posting is essentially "discretionary."  *See id.*  Agencies are permitted to make such proactive, discretionary disclosures, and they often do so, but agencies should not "confuse it with action taken under subsection (a)(2)(D)."  *See id.*

Accordingly, plaintiffs do not advance their cause by seeking to rely on a declaration the agency submitted in the *ALDF* case.  That declaration only confirms that the agency was "proactively posting" the information at issue "without waiting for a specific FOIA request," and that "later, if posted information was responsive to specific FOIA requests, APHIS generally referred requesters to the website, rather than processing and releasing records already available on the agency website." Pl Opp. 22. The fact that the agency occasionally referred requesters to the website for records that were already available there does not somehow convert the initial proactive disclosure into a release in response to a specific FOIA request under § 552(a)(3).   Nor can it be said that the subsequent act of referring requesters to the website is itself a release in

response to a FOIA request.  If a "release"  occurred at all -- even under plaintiffs' definition -- it occurred when the agency initially posted the records to the website, thereby making them "available" *en masse* to the public at large.  But, as explained above, any such release was not made "under" § 552(a)(3), so the posting could not have triggered a mandatory obligation under § 552(a)(2)(D).

Aside from being contrary to the plain language of § 552(a)(2)(D), plaintiffs' argument would subvert the will of Congress.  The whole point of this threshold requirement is to limit the disclosure obligation to records that the agency has already been *legally required* to release pursuant to § 552(a)(3).  The purpose of this limitation was to avoid creating any significant new disclosure obligations or burdens beyond those already imposed under the statute.  By expressly limiting the provision to records that have already been processed and released in response to a FOIA request, Congress sought to reduce duplicative FOIA requests for the same materials, without significantly expanding the agency's existing legal obligations under the statute.  *See*, *e.g.*, S. Rep. No. 104-272, at 13 (1996) (stating that "once released in response to a specific request under the FOIA, complying with the new requirement of making the previously released material, even in a redacted form, available for public inspection and copying should not be a burdensome undertaking"); *see also* H.R. Rep. 104–795, at 21 (1996), as reprinted in 1996 U.S.C.C.A.N. 3448, 3464 (stating that the provision will "help to reduce the number of multiple FOIA requests *for the same records requiring separate agency responses*" (emphasis added)).

Plaintiffs' argument would, if accepted, turn this scheme on its head, effectively penalizing agencies for proactively disclosing whole categories of records when they have no legal obligation to do so under FOIA.  Under plaintiffs' theory, an agency that proactively discloses categories of records it believes may be of interest to the public could inadvertently

7

trigger a mandatory legal obligation under FOIA, thereby preventing the agency from ever

revisiting the decision – even where, as here, the agency believes the posted records may

implicate the privacy interests of third parties.  Such a result would not only be contrary to the

plain language of the statute and Congressional intent, it would discourage agencies from making

such proactive disclosures at all, thereby subverting FOIA's goal of transparency.[1]  Def's Motion

to Dismiss the Compl. ("Def. Mot."), at 6-7, ECF No. 13.

### B.    Plaintiffs' Remaining Arguments Are Likewise Meritless

Unable to reconcile their claim with the language of § 552(a)(2)(D), plaintiffs make

several arguments urging the Court not to apply the language of that provision.  They argue: (1)

that their current allegations are sufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

556 (2007); (2) that defendants' have "already determined" that § 552(a)(2)(D) applies to the

records at issue; (3) that the agency should be "equitably estopped" from claiming the records do

not meet the requirements of § 552(a)(2)(D); and (4) that the Court should let them take

discovery rather than dismissing the complaint.  These arguments are all meritless.

First, plaintiffs cannot avoid dismissal by pointing to their own conclusory allegations

that "a record is required to be disclosed and yet has been withheld."  Pl. Opp. 16.  That

approach is refuted by their own cited authority, which makes clear that a complaint must

contain more than mere "labels and conclusions."  *Twombly*, 550 U.S. at 555.  Contrary to

plaintiffs' suggestion, an "improper withholding" under FOIA is typically alleged not on the

basis of labels and conclusions, but on the basis of a particular FOIA request, described in the

---

[1] Plaintiffs' Opposition does not argue that the initial posting of records was legally required under § 552(a)(2)(D), but it does assert that the agency *believed* it to be required under that provision.  Pl. Opp. 16-20.  That assertion is addressed below.

complaint, and on allegations that the agency denied or otherwise inadequately responded to that request under § 552(a)(3).  No such disclosure obligation is alleged to exist here, however, nor are there factual allegations from which to plausibly infer the existence of a disclosure obligation under § 552(a)(2)(D) -- or any other provision of the statute.

In any event, the complaint fails not merely because the supporting allegations are conclusory under *Twombly*, but also because the factual allegations that it does contain affirmatively *undermine* the claim that the categories of records sought here are subject to the alleged disclosure obligation under § 552(a)(2)(D).  *See, e.g.*, *U.S. ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 88 (D.C. Cir. 2014)  (explaining that rather than pleading facts to establish federal jurisdiction, plaintiff has "pled himself out of court" citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("[I]t is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible.")).  The complaint makes clear that these categories of records were made publicly available not in response to any FOIA request, but because the agency "routinely" posted records in these categories as they were obtained or generated.  Compl. ¶¶ 1, 31.  Given these allegations, plaintiffs cannot show that the records were categorically subject to mandatory disclosure under § 552(a)(2)(D).  *See, e.g.*, *Am. Civil Liberties Union v. Cent. Intelligence Agency*, 823 F.3d 655, 667–68 (D.C. Cir. 2016) (dismissal of a FOIA case for lack of subject matter jurisdiction where the court found that requested records were not subject to FOIA's disclosure requirements).

Second, plaintiffs argue that the agency has "already determined" that § 552(a)(2)(D) requires disclosure of the disputed "categories" of records, without regard to whether they were released in response to a specific FOIA request.  Pl. Opp. 16-20.

Much of this argument rests on misstatements and mischaracterizations.  Thus, for example, the federal register language plaintiffs cite contradicts plaintiffs' position because it correctly states that § 552(a)(2)(D) is limited to "documents released in response to a FOIA request."  USDA FOIA Regulations, 63 Fed. Reg. 24,467, 24,467 (May 4, 1998).  Likewise, the cited implementing regulation expressly states that § 552(a)(2)(D) is limited to records "which have been released pursuant to a FOIA request under 5 U.S.C. § 552(a)(3)."  7 C.F.R. § 1.4(a)(4). Plaintiffs mischaracterize this regulation in their brief, selectively quoting irrelevant language that deals with the multiple-request requirements in clause (ii) of § 552(a)(2)(D), while omitting entirely the above-quoted language about the threshold requirement in clause (i).  Plaintiffs similarly mischaracterize statements on the agency's electronic reading room website, which neither states nor implies that § 552(a)(2)(D) requires disclosure of whole "categories" of records, such as inspection reports, enforcement actions, or annual reports.[2]  To the contrary, it accurately states that the provision is limited to records "that have been processed and disclosed in response to a FOIA request."  *See* Pl. Opp. Ex. D, USDA FOIA Reading Room, at 3, ECF No. 19-5 ("This category consists of any records that have been processed and disclosed in response

---

[2] The website lists these categories as being included on the website but does not imply that FOIA requires the categories to be posted there.  Agencies are allowed, and indeed, encouraged to make such disclosures even when not legally required to do so under FOIA.  *See generally*, *e.g.*, Presidential Memorandum for Heads of Executive Departments and Agencies Concerning Transparency and Open Government, 74 Fed. Reg. 4685 (Jan. 21, 2009); Memorandum of the Attorney General for Heads of Executive Departments and Agencies Concerning the Freedom of Information Act, (March 19, 2009), available at, https://www.justice.gov/sites/default/files/ag/legacy/2009/06/24/foia-memo-march2009.pdf. Many agencies, like defendant, place such records on their websites or in their electronic reading room, *along with* records falling within the scope of § 552(a)(2)(D).  *See*, *e.g.*, www.justice.gov/oip/foia-library (stating that in addition to "frequently requested records," DOJ components "may also post other FOIA-processed documents which are likely to be of interest to the public").

to a FOIA request that APHIS determines have become – or are likely to become – the subject of multiple requests for substantially the same records.").

Likewise, plaintiffs mischaracterize the 2009 letter from APHIS leadership, wrongly telling the Court that "as of 2009 the agency clearly believed—and was representing to both the public and the agency's own staff—that it was posting information in its E-FOIA Reading Room because it was *required* to do so by the E-FOIA affirmative disclosure requirements." *See* Pl. Opp. 17-18 (discussing Pl. Opp. Ex. E, Letter from Kevin Shea, Acting Administrator of APHIS, ECF No. 19-6).  To the contrary, as explained in the opening brief, the letter says precisely the opposite.  Def. Mot. 13-16.  It emphasized that the agency was posting materials online – including inspection reports – even though it was *not* required to do so under FOIA, in furtherance of President Obama's policy of openness and transparency.[3]  *See* Pl. Opp. Ex. E at 2. *See also id.* at 3 (encouraging all APHIS programs to continue identifying categories of records "that, in the spirit of the President's call for public engagement and openness and transparency, should be made available online *even before we receive a single FOIA request for them*" (emphasis added));  Def. Mot. 13-14.

To be sure, as defendants acknowledged in their opening brief, there are some materials – including materials in a publicly filed administrative record – that actually do reflect the erroneous view that plaintiffs now wrongly seek to attribute to the agency as a whole.  Def. Mot. 15 n. 5 (citing as examples material from record filed in *Humane Society of the United States v.*

---

[3] The agency has elsewhere explained that such disclosures are discretionary, rather than mandatory, under FOIA.  *See, e.g.*, Department of Agriculture Chief Freedom of Information Act Officer Report, at 11 (March 2010), https://go.usa.gov/xNs4B (last visited June 29, 2017) (citing as "examples of our discretionary disclosures" the 2009 posting of inspection reports (numbering 50,164) and annual reports (numbering nearly 4000)) .

*USDA*, 1:05-cv-00197, ECF No. 72-2 (Oct. 1, 2008)).  Plaintiffs have now retrieved two internal

memoranda from that record, dated April 2003 and March 2004, respectively, which erroneously

state that § 552(a)(2)(D) requires disclosure of entire categories or records – inspection reports

and annual reports.[4]  Plaintiffs also cite statements in a 2015 FOIA response letter and a 2009

power point presentation expressing similarly erroneous views.  *See* Pl. Opp. Exs. I & N, ECF

Nos. 19-10 & 19-15.  As explained in the opening brief, however, such views are contrary to the

plain language of the statute and are thus are not controlling here.  Def. Mot. 15 & n. 5.

　　　　Plaintiffs do not respond to this point at all.  Indeed, plaintiffs do not even deny that the

cited statements are erroneous.  Nor could they, for even *plaintiffs* concede that clause (i) of §

552(a)(2)(D) imposes an independent threshold limitation on the scope of the provision.  Pl.

Opp. 21-25 (acknowledging that clause (i) imposes a separate requirement but arguing that the

previously-posted records meet that requirement by virtue of having been posted on the website).

By contrast, the erroneous views expressed in the materials they cite give no effect whatsoever to

that threshold requirement, and indeed, completely overlook the existence of the language

limiting the provision to records that have already been "released under [§ 552(a)(3)]."  *See*, *e.g.*,

Pl. Opp. Ex. H, at 2, ECF No. 19-9 (stating, without limitation or qualification, that "[t]his

category of records specifically includes those records that 'in the agency's best judgment are

likely to be the subject of multiple requests in the future'"); Pl. Opp. Ex. F, at 2, ECF No. 19-7

(stating, again without limitation or qualification, that § 552(a)(2)(D) requires disclosure of "all

records that 'the agency determines have become or are likely to become the subject of

---

[4] The agency expressly noted in *HSUS* that it did not concede the records at issue were
subject to mandatory disclosure under 552(a)(2).  *See*, *e.g.*, *HSUS*, 1:05-cv-00197, ECF No. 16 n.
1 (Dec. 1, 2005).  *See also*, *e.g.*, *id.*, ECF No. 45 n. 1 (Dec. 21, 2006).

subsequent requests for substantially the same records'"").  In other words, these materials reflect the same mistaken conception about the scope of § 552(a)(2)(D) that OIP sought to dispel when it issued guidance about the provision in 2003.  *See* FOIA Q&A (emphasizing that if agencies post records before receiving "even a first FOIA request," the posting is essentially "discretionary," and that agencies should not "confuse [the posting] with action taken under subsection (a)(2)(D)").

Third, the Court should reject plaintiffs' assertion that the agency is "equitably estopped" from applying the language of § 552(a)(2)(D) to the allegations in the complaint.  Pl. Opp. 24.

It is well-settled that "equitable estoppel will not lie against the Government as it lies against private litigants" and "the bar for succeeding on such a claim is high." *Millard Refrigerated Services, Inc. v. Secretary of Labor*, 718 F.3d 892, 897–98 (D.C. Cir. 2013) (citation omitted).  *See also*, *e.g.*, *Rann v. Chao*, 346 F.3d 192, 197 (D.C. Cir. 2003) (recognizing the "powerful cautions" against applying equitable estoppel against the government).  "To apply equitable estoppel against the government, a party must show that (1) there was a definite representation to the party claiming estoppel, (2) the party relied on its adversary's conduct in such a manner as to change his position for the worse, (3) the party's reliance was reasonable and (4) the government engaged in affirmative misconduct." *Morris Commc'ns, Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009) (citations omitted); *see also Gen. Accounting Office v. GAO Pers. Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983) ("Estoppel generally requires that government agents engage—by commission or omission—in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result.").

Plaintiffs do not even attempt to allege these elements, and thus fail to clear the "extraordinarily high hurdle required to invoke equitable estoppel against the government." *Chennareddy v. Dodaro*, 698 F.Supp.2d 1, 24 (D.D.C. 2009).  *See also*, *e.g.*, *United States v. Philip Morris Inc.*, 300 F.Supp.2d 61, 70 (D.D.C. 2004) ("[N]either the Supreme Court nor this Circuit has ever upheld a finding of equitable estoppel against the Government.").  Although plaintiffs assert that they "relied on the fact that the agency has for years been posting this information in its Electronic Reading Room," they do not assert that the agency made a "definite representation" to them.  Pl. Opp. 24. *See Morris Commc'ns*, 566 F.3d at 191; *Keating v. FERC*, 569 F.3d 427, 434 n. 1 (D.C.Cir. 2009) (stating that "[a]s Keating's claim to estoppel fails at this first step, we need not consider the remaining estoppel elements").  Nor do plaintiffs allege that they "change[d] [their] position for the worse" in reliance on defendants' conduct, or that any such reliance was "reasonable."  To the contrary, plaintiffs' allegations indicate that the agency's conduct has only benefited them because the materials were "easily accessible" to plaintiffs "for many years," making it unnecessary for them to periodically submit what they view to be unduly time-consuming FOIA requests.[5]  Compl. ¶ 31.  Moreover, plaintiffs allege no "affirmative

---

[5] Equitable estoppel would be improper here for independent reasons.  The absence of an "improper withholding" implicates this Court's jurisdiction under FOIA, 5 U.S.C. § 552(a)(4)(B), which is not subject to waiver by the parties, through conduct or otherwise. *See Gardner v. United States*, 211 F.3d 1305, 1310 (D.C. Cir. 2000).  *See also Leiterman v. Johnson*, 60 F. Supp. 3d 166, 188 (D.D.C. 2014) (finding that "that equitable estoppel may not be invoked to undercut a jurisdictional exhaustion requirement" (citation omitted)).  And it would be especially improper to apply this equitable doctrine where, as here, the relief sought potentially implicates the privacy interests of third parties not currently before the Court.  *See ALDF*, 2017 WL 2352009, at *9-10 (explaining that regulated individuals and entities have an interest in ensuring that the agency does not publicly disclose their private information in the disputed records).

misconduct," such as misrepresentations or concealment.  *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

<u>Finally</u>, the Court should reject plaintiffs' attempt to stave off dismissal by requesting jurisdictional discovery.  Pl. Opp. 20, 25 (citing *Ignatiev v. United States*, 238 F.3d 464 (D.C. Cir. 2001)).  As defendants have already explained in opposing plaintiffs' motion for discovery, that motion should be denied because discovery is inappropriate in FOIA cases, especially where, as here, defendant has filed a motion to dismiss identifying jurisdictional and other threshold defects in the complaint.  Plaintiffs now seek to use that dispositive motion itself to justify discovery, claiming they should be allowed to take "jurisdictional discovery" prior to dismissal. Pl. Opp. 25 (citing *Ignatiev*, 238 F.3d at 467.  This argument is also meritless.

Jurisdictional discovery is "justified only if the plaintiff reasonably demonstrates that it can supplement its jurisdictional allegations through discovery."  *Duarte v. Nolan*, 190 F. Supp. 3d 8, 15 (D.D.C. 2016) (Cooper, J.) (citations omitted); *see also Baptist Mem'l Hosp. v. Johnson*, 603 F. Supp. 2d 40, 44 (D.D.C. 2009) ("When requesting jurisdictional discovery, . . . a plaintiff must make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce.'"); *Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009) ("conclusory assertions about the potential value of discovery are insufficient unless supported by specific discoverable facts").  Plaintiffs make no such showing.

Plaintiffs identify no necessary (or even relevant) discoverable facts within the agency's possession. This case is nothing like *Ignatiev*, where plaintiffs identified specific documents that were "necessary" to show jurisdiction, and that they had "reason to believe" were in the agency's possession.  *Ignatiev*, 238 F.3d at 467.  Far from showing the need to establish jurisdictional

facts,[6] plaintiffs themselves insist that this whole case raises "purely legal issues." Pl. Opp. 31.

Defendants certainly agree that the ground for dismissal at issue here presents purely legal

issues.[7] Def. Mot. 4 n. 1 (emphasizing that the facts in the complaint are assumed to be true for

purposes of the motion to dismiss). As to previously-posted records, for example, the issue is

whether whole categories of records that were "routinely" posted on the agency website, in the

absence of a specific FOIA request or obligation under § 552(a)(3), can be said to "have been

released under" § 552(a)(3). Having expressly admitted that this case raises such "purely legal"

issues, plaintifs' cannot now claim they need discovery. *FC Inv. Group LC v. IFX Markets, Ltd.*,

529 F.3d 1087, 1094 (D.C. Cir. 2008) (explaining that jurisdictional discovery request "cannot

be based on mere conjecture or speculation" (citation omitted)).

## II.    Plaintiffs Do Not Claim to Have Submitted a Proper FOIA Request, or to Have Exhausted Their Remedies With Respect to Such Request

Plaintiffs' claim should also be dismissed because it is not based on a properly submitted

FOIA request, and because plaintiffs did not exhaust their remedies before filing suit. The plain

---

[6] Plaintiffs clearly do not need discovery to "further" demonstrate that agency officials have construed § 552(a)(2)(D) in a manner that is inconsistent with its plain language, and with the agency's current position. Pl. Opp. 18. The agency already acknowledged as much in its opening brief, Def. Mot. 15 & n.5, explaining that the point was irrelevant. *See Baptist Memorial*, 603 F.Supp.2d at 44 ("Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it is inappropriate to subject defendant to the burden and expense of discovery." (citation omitted)). Nor do plaintiffs need discovery about how "frequently" these records have been requested. Pl. Opp. 25. That issue relates to Clause (ii) of § 552(a)(2)(D), rather than the antecedent requirement of Clause (i). Since Clause (i) makes clear that the provision "does not even come into play" until an agency processes and releases records in response to a FOIA request, *see* FOIA Q&A, discovery directed at Clause (ii) is wholly irrelevant.

[7] That is not to say that the Court would face no factual issues if plaintiffs' claim were allowed to proceed to the merits. The Court could not order the production of records that plaintiffs seek without first determining, *inter alia*, whether they are exempt in whole or in part. *See* Def. Mot. 21-22. *See also infra* 21-22.

language of the statute, as well as the binding law of this Circuit, make clear that those seeking to enforce the affirmative disclosure provision, 5 U.S.C. § 552(a)(2), must submit a proper request and exhaust remedies.  Notably, in the parallel action in the Northern District of California, where plaintiffs challenge the same removal decision challenged here, and assert similar claims under § 552(a)(2)(D), the *ALDF* court rejected exactly the same exhaustion arguments plaintiffs seek to make here.  Relying primarily on precedent from this Circuit, the *ALDF* court found that plaintiffs seeking to enforce the affirmative disclosure provisions must file a request and exhaust their remedies prior to bringing suit.  *See ALDF*, 2017 WL 2352009, at *6 ("Plaintiffs' argument that there is no requirement to exhaust administrative remedies when seeking to enforce section 552(a)(2) is not supported by the language of FOIA or the precedent plaintiffs cite. Plaintiffs were required to exhaust administrative remedies.").  Plaintiffs do not address this decision in their Opposition, despite the fact that it was issued the day before they filed their brief.

Nor do plaintiffs make any significant attempt to address the applicable statutory language.  As the *ALDF* court emphasized, FOIA expressly contemplates the submission of requests for records under all three of FOIA's access provisions, including the reading room provision at issue here, § 552(a)(2), and it also expressly contemplates the exhaustion of remedies with respect to such requests.  *ALDF*, 2017 WL 2352009, at *6 (quoting 5 U.S.C. § 552(6)(A) & (C)(i));  *See also* 5 U.S.C. § 552(6)(A) ("Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—(i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request . . ."); *id.* § 552(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have

exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions").

Indeed, under the statute, submission of an appropriate request is an explicit jurisdictional requirement that must be met in order to obtain judicial review of a § 552(a)(2) claim.  FOIA's jurisdictional provision, § 552(a)(4)(B), "governs judicial review of *all three types of documents – that is, requests for information under sections 552(a)(1), (2), or (3)*."  *CREW v. DOJ*, 846 F.3d 1235, 1240 (D.C. Cir. 2017) (emphasis added, citing *Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1202 (D.C. Cir. 1996)).   Under § 552(a)(4)(B), the Court's jurisdiction is limited to ordering the production of records improperly "withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  By limiting jurisdiction to records that were improperly "withheld" from a particular complainant, the statute necessarily contemplates the submission of a request for the information sought.  *See*, *e.g.*, *Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2008) ("It cannot be said that an agency improperly withheld records if the agency did not receive a request for those records."); *Brunsilius v. Dep't of Energy*, 514 F. Supp. 2d 30, 36 (D.D.C. 2007) (stating that "[f]ederal jurisdiction over a FOIA claim is dependent upon a showing that an agency improperly withheld agency records," and that "[i]f no FOIA request is received, an agency has no reason to search or produce records and similarly has no basis to respond").

Nor do plaintiffs make any serious attempt to reconcile their claim with controlling D.C. Circuit precedent, which likewise confirms that a plaintiff must submit a proper request before seeking to enforce the reading room provisions of § 552(a)(2).  *See*, *e.g.*, *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) (rejecting claim for records under § 552(a)(2) because plaintiff had not submitted a proper FOIA request for identifiable records under either § 552(a)(2) or 552(a)(3)); *CREW v. DOJ*, 164 F.Supp.3d 145, 154 (D.D.C. 2016) (explaining that *Irons* "stands

18

for the proposition" that § 552(a)(2) can be enforced by submitting a request under either §

552(a)(3) or "directly under Section 552(a)(2), so long as the request, like those made under

Section 552(a)(3), is for 'identifiable' records"), *affirmed*, 846 F.3d 1235 (D.C. Cir. 2017).  *See*

*also*, *e.g.*, *CREW*, 846 F.3d at 1240 (discussing judicial review of "requests" under all three

access provisions, including 552(a)(2), and citing with approval *Irons* holding that § 552(a)(2)

materials must be "properly requested"); *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d

1114, 1117 (D.C. Cir. 2017) ( "As to FOIA  § 552(a)(2), our decisions dealing with the

enforcement of this subsection have not discussed standing. But in each such case the plaintiff

made a request of the agency and the agency denied the request.").

Plaintiffs' only response is based on a misreading of *CREW*, a case that actually refutes

their argument, rather than supports it.  Like the *ALDF* plaintiffs, they erroneously rely on the

*CREW* court's statement in dicta that "a plaintiff may bring an action under FOIA to enforce the

reading-room provision, and may do so without first making a request for specific records under

section 552(a)(3)."  *CREW*, 846 F.3d at 1240 (citing *Irons*, 465 F.2d at 614 ("the opinions and

orders referred to in Section 552(a)(2), *when properly requested*, are required to be made

available, and . . . such requirement is judicially enforceable without further identification under

Section 552(a)(3), even though the agency has failed to make them available as required by

Section 552(a)(2)" (emphasis added))).   As the *ALDF* court explained:  "Plaintiffs misread this

language as holding that plaintiffs seeking to enforce the reading-room provision need not make

any request at all.  But as *CREW* and *Irons* make clear, a plaintiff seeking to enforce the reading

room provision is only excused from making 'further identification under Section 552(a)(3)'

before bringing an action, *and must still 'properly request' the documents under section

552(a)(2)*."  *ALDF*, 2017 WL 2352009, at *6 (emphasis added) (quoting *Irons* and *CREW*).  *See*

*also CREW*, 164 F.Supp.3d at 154 (explaining that *Irons* "stands for the proposition" that §

552(a)(2) can be enforced by submitting a request under either § 552(a)(3) or "directly under

Section 552(a)(2), so long as the request, like those made under Section 552(a)(3), is for

'identifiable' records")

    Plaintiffs also repeat their assertions that they will be "harmed" if they are required to

submit a request and exhaust remedies, claiming that there is a "backlog" of requests and that the

agency takes too long to respond.  Pl. Opp. 18.  The argument is irrelevant because the statute

and binding precedent require submission of a request and exhaustion.  In any event, defendants

responded to those points in their opening brief, explaining that Congress had already addressed

plaintiffs' concern by imposing aggressive constructive exhaustion timelines and allowing

requesters to seek expedited processing.  Defendants further explained that plaintiffs' attempt to

bypass Congress's exhaustion requirements would unfairly prioritize their claim over those of

others who (unlike plaintiffs) properly complied with those requirements.  Def. Mot. 18-19

(further emphasizing that the agency is already reviewing and reposting the records to the extent

possible, irrespective of any specific request).  Plaintiffs respond to none of this.

    Finally, plaintiffs wrongly assert that requiring a predicate request and exhaustion would

be "absurd," and that it would render "meaningless" the affirmative disclosure mandate in §

552(a)(2).  Pl. Opp. 33.  *See CREW*, 164 F. Supp. 3d at 155 (rejecting similar argument that

requiring a request would not adequately remedy violations of reading room provision).  To the

contrary, the norm in administrative law is to require exhaustion of remedies -- regardless of

whether the underlying legal obligation is itself predicated on the submission of a request.  *See*,

*e.g.*, *Morris v. McCarthy*, 825 F.3d 658, 667 (D.C. Cir. 2016) (applying exhaustion requirement

under Title VII, and emphasizing the "substantial  benefits of exhaustion" in administrative law

generally).  Thus, it is not surprising that Congress chose to require exhaustion for claims under both §§ 552(a)(2) and 552(a)(3), especially given that the authorized relief under FOIA is the same for both provisions – production of records to the individual complainant, rather than publication.  *See CREW*, 846 F.3d at 1243; *see also* ALDF, 2017 WL 2352009, at \*5-6.  As discussed below, and in the Motion, this case illustrates the wisdom of Congress's approach, and why it is generally preferable to adjudicate FOIA claims in the context of a specific request, which specifies identifiable records to which the plaintiffs seek access.  *See Gulf Oil Corp. v. Brock*, 778 F.2d 834, 841 (D.C. Cir. 1985).

### III.  Even If Plaintiffs Had Satisfied FOIA's Jurisdictional Prerequisites, Their Claim Would Not Be Ripe for Review

The Motion also demonstrated that plaintiffs' FOIA claim is not ripe, Def. Mot. 20-23, and plaintiffs' response provides no reason to conclude otherwise, *see* Pl. Opp. 30-34.

First, the D.C. Circuit's recent *Prisology* decision casts considerable doubt on plaintiffs' assertion that this case is even constitutionally ripe.  Plaintiffs assert that *Prisology* is distinguishable because they have asserted a particular need for the information and and thus that they have injuries that are independent of having a request denied.  But a plaintiff's particular need for information is irrelevant under FOIA.[8]  And the D.C. Circuit strongly implied that in the absence of a request, the mere inability to access information on the internet could not form the basis of a sufficiently particularized injury for purposes of Article III.  As the court explained, "[e]ven if we inferred an injury to [plaintiff] from the Bureau's alleged failure to publish its

---

[8] *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) ("Sears' rights under [FOIA] are neither increased nor decreased by reason of the fact that it claims an interest . . . greater than that shared by the average member of the public."); *EPA v. Mink*, 410 U.S. 73, 86 (1973) (FOIA does not "permit inquiry into particularized needs of the individual seeking the information").

records electronically, this would not differentiate [plaintiff] from the public at large. All that inference would reveal is a harm common to everyone, a harm of the sort [the Supreme Court] described as not stating an Article III case or controversy." *See Prisology*, 852 F.3d at 1116-17. So too here, absent a specific request and denial thereof, plaintiffs' inability to access records published on the website "is a harm common to everyone," not just plaintiffs. *See also*, *e.g.*, *Gulf Oil Corp.*, 778 F.2d at 841 ("Without a specific request at issue, [plaintiffs'] claim becomes a 'generalized challenge' which would be on a 'much surer footing in the context of a specific application.'" (citation omitted)).

In any event, plaintiffs' claim is clearly not prudentially ripe because the decision challenged is not sufficiently final, the issues raised are not "purely legal," and because those issues do not arise in a sufficiently concrete setting to permit judicial review.[9]  Def. Mot. 20-23. The lack of finality alone is grounds for finding the case unripe.  Plaintiffs assert that finality is irrelevant because their claim does not arise under the APA, Pl. Opp. 30, but that is incorrect. While "final agency action" is a statutory prerequisite to a cause of action under the APA, 5 U.S.C. § 704, finality is also important to determining ripeness.  *See*, *e.g.*, *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) ("Courts decline to review 'tentative' agency positions because doing so 'severely compromises the interests' the ripeness doctrine protects.").  Indeed, a challenged decision might qualify as "final agency action" for purposes of the APA, but nonetheless still not be "sufficiently final" for purposes of ripeness.  *See Toca Producers v.*

---

[9] Plaintiffs assert that the Court should be "wary" of applying these principles in light of dicta from *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2347 (2014).  But that case explicitly declined to modify existing prudential ripeness doctrine, *see id.*, and the Court thus remains bound by longstanding D.C. Circuit and Supreme Court precedent cited in the opening brief.  *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005).

*FERC*, 411 F.3d 262, 266 (D.C. Cir. 2005) (citation omitted).  Here, the challenged removal does not meet the finality criteria for either ripeness or the APA.  *See* Def. Mot. 21.  Moreover, contrary to plaintiffs' suggestion, Pl. Opp. 33-34, it makes no difference, for purposes of finality, whether the agency views the posting of such records as mandatory or voluntary.  The challenged action is the removal of agency records, not the agency's subjective beliefs about its own legal obligations.

Plaintiffs also wrongly argue that their case would not implicate any exemptions, and thus raises "purely legal" issues.  They are clearly wrong to suggest that the agency is "foreclosed" from claiming exemptions on previously-posted materials.  Pl. Opp. 32.  Contrary to their suggestion, "[i]ndividuals have a privacy interest even as to information that has been previously disclosed publicly."  *Showing Animals Respect and Kindness v. U.S. Department of Interior,* 730 F.Supp.2d 180, 197 (D.D.C. 2010) (citing *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 765–66 (1989)).  *See also, e.g.*, *Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 364 & n. 12 (5th Cir. 2001) (emphasizing that agency cannot waive individual privacy rights under FOIA, which may only be waived by individual whose informational privacy interests are protected) (citing cases).  Moreover, an agency need not disclose an exempt record unless there is an "identical" record in the public domain, and it is the *plaintiff's* burden to show that the information is freely available.  *Davis v. DOJ*, 968 F.2d 1276, 1280 (D.C. Cir. 1992).  Plaintiffs' entire case rests on their claim that the previously-posted records are no longer "freely available," and thus they would be hard-pressed to meet this burden.  *See Reporters Committee*, 489 U.S. at 764 (stating that if the information sought "were 'freely available,' there would be no

reason to invoke the FOIA to obtain access").  In any event, that issue would itself be a factual

one, not a "purely legal" one, and would not wholly obviate the need to litigate exemptions.[10]

Apart from erroneously asserting that the case would not implicate any exemptions,

plaintiffs make no effort to support their claim that the case raises "purely legal" issues.  Nor do

they attempt to rebut defendant's showing that review would be "judicially unmanageable" and

"disruptive" of the ongoing review process.  *See* Def. Mot. 22 (explaining that the universe of

records at issue is "vast, ill-defined, and ever-changing," and pointing out that judicial review

would be duplicative and disruptive of the agency's ongoing review process).  Thus, those points

should be treated as essentially conceded.

Plaintiffs also do not meaningfully address the point that their claim would at least be

more manageable in the context of a specific FOIA request, as numerous D.C. Circuit cases

make clear.  *See* Def. Mot. 21 (citing several D.C. Circuit decisions dismissing for lack of

ripeness in the absence of a specific request for records under FOIA).  Plaintiffs' only response is

to repeat their erroneous argument that FOIA does not require submission of a request prior to

seeking judicial enforcement of § 552(a)(2).  Pl. Opp. 33.  That argument, aside from being

incorrect, is not responsive to the ripeness problems addressed in this section.  The point here is

not that FOIA requires submission of a request prior to seeking judicial enforcement of §

552(a)(2) -- although it clearly does, as discussed above.  Rather, the point here is that in the

---

[10] Likewise, records obtained or generated after the February 3 removal, which have never been previously posted, would also clearly implicate factual issues bearing on exemptions. Plaintiffs do not attempt to refute this point, other than to state in a vague and conclusory manner that their claim does not implicate any such exemptions because they are not challenging specific "redactions."  Pl. Opp. 32.  The statement is contrary to their own complaint which seeks an order requiring all such records be made available to plaintiffs "immediately after they are generated or obtained"  Compl. ¶ 37(3).  It also ignores the fact that exempt records may sometimes be withheld in full.

absence of the more concrete setting and factual development that such a such request would provide, plaintiffs' claim in this case is not "fit" for judicial review and should be dismissed on ripeness grounds.  On that issue, plaintiffs' brief is silent.

Given that plaintiffs' FOIA claim does not meet the "fitness" prong, there is no need to consider the hardship prong.  *See* Def. Mot. 20.   In any event, plaintiffs' alleged "hardship" is unpersuasive.  *See id.  Am. Petroleum*, 683 F.3d at 389 ("Considerations of hardship that might result from delaying review 'will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions.'" (citation omitted)).  Plaintiffs assert that they rely on the records at issue in their daily activities.  Pl. Opp. 34 (citing the Complaint).  But this is not even responsive to the points made in the Motion.  There, defendants explained that the ongoing review process has already resulted in the reposting of many thousands of records, and that other records could be obtained through FOIA, which addresses delay concerns by imposing tight constructive exhaustion deadlines and providing, where appropriate, for expedited processing.  Def. Mot. 28.  *Cf. also ALDF*, 2017 WL 2352009, at *9 (noting that plaintiffs' concerns about frustration of mission are "largely resolved" because the agency has resumed posting records, with a focus on most recent and most relevant).  Again, "[t]he burden of having to file another suit is hardly the type of hardship which warrants immediate consideration of an issue presented in an abstract form."  *See Gulf Oil Corp.*, 778 F.2d at 842 (footnote omitted).  This is especially so where, as here, the agency is already engaged in a process that could make another suit – and this suit – completely unnecessary.

## CONCLUSION

Accordingly, defendant respectfully asks the Court to dismiss plaintiffs' complaint.

Dated:  June 29, 2017                    Respectfully submitted,

                                         CHAD A. READLER
                                         Acting Assistant Attorney General

                                         CHANNING D. PHILLIPS
                                         United States Attorney

                                         MARCIA BERMAN
                                         Assistant Branch Director
                                         Civil Division

                                          /s/ Peter M. Bryce
                                         PETER M. BRYCE
                                         (IL Bar No. 6244216)
                                         Senior Counsel
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         P.O. Box 883, Room 7138
                                         Washington, D.C. 20530
                                         Tel: (202) 616-8335
                                         Fax: (202) 616-8470
                                         E-mail: peter.bryce@usdoj.gov
                                         Attorney for Defendant