UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 17-269 (CRC) |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al. | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' PROPOSED SURREPLY IN RESPONSE TO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Plaintiffs' file this surreply to respond to a matter addressed by Defendants in their reply to their motion to dismiss, ECF No. 23, that Plaintiffs did not have an opportunity to address in their opposition brief: namely, Defendants' reliance on the May 31, 2017, decision denying a motion for a preliminary injunction in *Animal Legal Defense Fund v. U.S. Department of Agriculture*, No. 17-CV-00949, 2017 WL 2352009 (N.D. Cal. May 31, 2017) ("*ALDF*"). For the following reasons, the decision in *ALDF* relied on by Defendant United States Department of Agriculture ("USDA") does not support Defendants' motion to dismiss this case brought to enforce the affirmative disclosure requirements of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(2).

## ARGUMENT

**A.     The Decision in *Animal Legal Defense Fund v. U.S. Dep't of Agriculture*, No. 17-00949 (N.D. Cal. May 31, 2017) Does Not Support Dismissing This Case.**

The preliminary injunction decision in *ALDF* does not provide a basis for dismissing this case for several reasons.

### 1.     This Court Should Not Follow a Different Court's Preliminary Decision Issued Under Emergency Circumstances.

To begin with, the *ALDF* decision was issued by a different court in a very different context than present here—i.e., in response to a request from the plaintiff for emergency injunctive relief. In such cases, the plaintiff bears the burden of proving that it is likely to succeed on the merits. *Wash. Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977).

Here, in sharp contrast, Defendants, who have moved to dismiss this case, bear the burden of demonstrating that Plaintiffs have not alleged a "plausible" basis for relief—i.e., that the USDA be required to release many of the records that it previously disclosed to the public but removed from its Electronic Reading Room on February 3, 2017. *See* Complaint, ECF No. 1, at 14-15; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (requiring a Complaint to contain "enough factual matter (taken as true)" to suggest a "plausible" basis for relief).

Given the very different postures and burdens of proof, it would not be appropriate for this Court to rely on the *ALDF* decision to dismiss this case. Indeed, the district court in *ALDF* may very well change its mind after that case is fully briefed on the merits. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (noting that "given the haste" involved in deciding a motion for a preliminary injunction, such motions are decided "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); *id.* at 398 (noting

that "[w]hile it is true that some of the [court's] language suggests a conclusion that [the plaintiff] would win on the merits, the court certainly did not hold that the standards for a summary judgment had been met"); *see also Dupuy v. NLRB*, 806 F.3d 556, 562 (D.C. Cir. 2015) (declining to follow a similar case due to "a materially different procedural posture"); *Riley v. BMO Harris, N.A.*, 115 F. Supp. 3d 87, 97 n.5 (D.D.C. 2015) (court not required to follow a similar case where that court "was operating in a different procedural posture").

### 2. The *ALDF* Decision Misapplied the D.C. Circuit's Ruling in *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017).

Second, the *ALDF* court's reliance on *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*, 846 F.3d 1235 (D.C. Cir. 2017) ("*CREW*") for its conclusion that the plaintiff was required to exhaust administrative remedies simply cannot be squared with the plain language of *CREW*, which held that "[e]qually certain under our case law, *a plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3).*" *Id*. at 1240 (emphasis added). The California district judge's determination that the Court of Appeals in *CREW* nevertheless meant to apply an exhaustion requirement because it cited the 1972 case of *Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972), *see ALDF*, Mem. Op. at p. 11, is incorrect and would render the actual holding of *CREW* meaningless.

*Irons*, which was brought twenty-four years *before* the 1996 E-FOIA amendments were enacted, involved a claim that the Commissioner of the Patent Office had violated the affirmative disclosure requirements for "final opinions . . . made in adjudication of cases" by not publishing for public inspection "all unpublished manuscript decisions of the Patent office," which, the Court noted "have accumulated over more than a hundred years." 465 F.2d at 610-12. It was in

that specific context that the Court noted that "when a request . . . is made in such general terms as here, involving *a large and indefinite number of records which have accumulated over the entire history of this agency*, the agency and the court are entitled to scrutinize the request more carefully for compliance with the Act *than in the usual case*." 465 F.2d at 614-15 (emphases added). The Court held that because the plaintiff in that case had failed to request "identifiable" records, it was required to do so before it could bring a lawsuit compelling the agency to affirmatively disclose those records, to afford the agency an opportunity to locate the specific records at issue. *Id.* at 614 ("As the [district] judge pointed out, the request is too broad. It is *broader than the statutory limits of Section 552(a)(2)*." (emphasis added)).

It was in that specific *unusual* context that the Court in *Irons* stated that "we agree that the opinions and orders referred to in Section 552(a)(2), when properly requested, are required to be made available, and that such requirement is judicially enforceable without further identification under Section 552(a)(3)," 465 F.2d at 614—i.e., the language that the *ALDF* court relied on to state that both *Irons* and *CREW* (which cited *Irons*) stand for the proposition that a plaintiff seeking to compel the affirmative disclosure of *any* records under 552(a)(2) must first "properly request" such records.

However, the "when properly requested" language is taken completely out of context. That language does *not* mean—and the D.C. Circuit certainly has *never* held—that plaintiffs must first request records that are required to be disclosed under the affirmative disclosure requirement before they may bring a lawsuit challenging the agency's failure to comply with those requirements. On the contrary, as made absolutely clear by the specific context of *Irons*, the "when properly requested" language means when such records are properly *identified. See, e.g.*, 465 F.2d at 614 (noting that it is "implicit" in Section 552(a)(2) "that the opinions and

orders there referred to are identifiable"); *see also id.* ("The language 'identifiable records' appears only in Section 552(a)(3), but this is simply because the final opinions and the orders referred to in Section 552(a)(2), to be made available under published rules, *are of course identifiable*." (emphasis added)).

Here, however, there is no similar issue. On the contrary, the USDA knows precisely what records are at issue—i.e., the categories of records it removed from its website on February 3, 2017, and which the current record shows the agency long ago determined it was *required* to affirmatively disclose because they "have become or are likely to become the subject of subsequent requests for substantially the same records." 5 U.S.C. § 552(a)(2)(D)(ii)(I); *see also* Pl. Opp. at 8-10, 16-20 (describing internal agency documents and public pronouncements stating that the agency is *required* to publish the categories of information at issue in this case).

Indeed, the California court's reading of *Irons* renders meaningless the Court of Appeals' holding in *CREW* that "a plaintiff may bring an action under FOIA to enforce the reading-room provision . . . *without first making a request for specific records under section 552(a)(3)*," 846 F.3d at 1240 (emphasis added), because under the California court's decision, where the records at issue under Section 552(a)(2) are already identifiable, the requester nevertheless has to make a formal request for them, wait twenty working days for a response from the agency, and then appeal the denial of that request and wait another twenty days before being able to file a lawsuit to compel compliance with the affirmative disclosure requirement. However, that result is indistinguishable from the process for obtaining records under § 552(a)(3)—precisely what the Court of Appeals said in *CREW* was *not* required.

Moreover, as Plaintiffs explained in their Opposition, requiring Plaintiffs to make FOIA requests to obtain information that Congress mandated be affirmatively disclosed would

completely undermine the entire purpose of the 1996 E-FOIA Amendments—i.e., to *reduce* the

number of FOIA requests the agency must process. *See* Plaintiffs' Opposition, ECF No. 19 at 6-

7; *see also* S. Rep. No. 104-272 at *13 (1996) ("The purpose of this provision . . . is *to prompt*

*agencies to make information available affirmatively on their own initiative* in order to meet

anticipated public demand for it." (emphasis added)). Indeed, as the USDA itself informed the

public:

> On October 2, 1996, the Electronic Freedom of Information Act Amendments of 1996
> (E-FOIA) were signed into law. *E-FOIA makes it possible for individuals to have*
> *electronic access to certain USDA information without having to make formal FOIA*
> *requests*.

 https://www.fsis.usda.gov/wps/portal/footer/policies-and-links/freedom-of-information-act

(emphasis added) (last visited June 30, 2017). Accordingly, the California district court's

preliminary reading of *CREW* is incorrect.[1]

### 3.      The *ALDF* Decision Misconstrues the Language of FOIA.

Nor can the California court's statutory interpretation override the Court of Appeals'

ruling in *CREW*, which this Court must follow. The *ALDF* court interpreted FOIA's provisions

to require the submission of a request for records before an agency must make them available to

the public pursuant to FOIA's Reading Room provisions, *see ALDF*, Mem. Op. at 10–12, which

---

[1] In *ALDF*, as in this case, the USDA also relied on a recent decision by the Court of Appeals for
this Circuit, *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114 (D.C. Cir. 2017), to argue
that the D.C. Circuit has definitively affirmed—post *CREW*—that plaintiffs seeking to enforce
the affirmative disclosure requirements of FOIA must first request submit a FOIA request for
such records. *See ALDF*, Defendants' Opposition to Plaintiff's Motion for a Preliminary
Injunction, ECF No. 22, at 11; Defendants' Memorandum in Support of Motion to Dismiss, ECF
No. 13, at 17; Defendants' Reply in Support of Motion to Dismiss, ECF No. 23, at 19, 21–22.
However, while Plaintiffs in this case demonstrated that *Prisology* says no such thing, but
instead simply addressed what is required to demonstrate sufficient standing to challenge an
agency's failure to comply with the affirmative disclosure requirements—which Plaintiffs here
have amply pleaded, *see* Plaintiffs' MTD Opposition, ECF No. 10, at 26-27; Compl. ¶¶ 4–9—the
plaintiff in *ALDF* chose not to address that decision in its preliminary injunction briefs.

conflicts with *CREW*'s clear holding that "a plaintiff may bring an action under FOIA to enforce

the reading-room provision . . . without first making a request for specific records under section

552(a)(3)," 846 F.3d at 1240, as well as conflicting with FOIA's plain language.  Indeed, the

Act's plain language, and its entire legislative purpose—to make records available *without

requiring members of the public to submit FOIA requests*—makes clear that such requests are

not required for information that agencies are required to affirmatively disclose.

Section 552(a) of the Act provides that "[e]ach agency *shall make available to the public

information as follows*," 5 U.S.C. § 552(a) (emphasis added), and subsections (1) and (2) require

agencies to make certain enumerated records available to the public, *without a request for such

records*. Thus, subsection (1) provides that "[e]ach agency shall separately state and currently

publish in the Federal Register for the guidance of the public" certain information, including

"descriptions of its central and field organization," "rules of procedure," etc.. 5 U.S.C. §

552(a)(1). Subsection 2—the provision at issue in this case—provides that: "[e]ach agency . . .

shall make available for public inspection in electronic format" certain information, including

"final opinions . . . as well as orders, made in the adjudication of cases"; "administrative staff

manuals," and

> copies of all records . . . (i) that have been released to any person under paragraph (3);
> and (ii) (I) that because of the nature of the subject matter, the agency determines have
> become or are likely to become the subject of subsequent records for substantially the
> same records; or (II) that have been requested 3 or more times.

5 U.S.C. § 552(a)(2). Here, neither subsection (1) nor subsection (2) includes language requiring

a *request* for information before an agency is required to affirmatively disclose such information.

In sharp contrast, subsection (3)—the provision requiring agencies to respond to FOIA

requests—specifically provides that

> *[e]xcept with respect to the records made available under paragraphs (1) and (2) of this subsection . . .* each agency, *upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules* stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3) (emphasis added). Thus, not only does this provision specifically differentiate between records that are required to be "made available under paragraphs (1) and (2)"—*for which no request is required*—but it also specifically conditions the agency's duty to produce all *other* records only upon a proper "request for records." *Id.* Therefore, because Congress omitted this specific language in Subsections (1) and (2)—and because, again, requiring members of the public to make FOIA requests would defeat the entire purpose of the 1996 E-FOIA Amendments—the Court may not read into the statutory provision at issue a condition that Congress chose *not* to impose. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *see also W. Minn. Mun. Power Agency v. Fed. Energy Reg. Comm'n*, 806 F.3d 588, 594–95 (D.C. Cir. 2015) (quoting *Russello*).[2]

The mere fact that the statute imposes a duty on *agencies* to respond to requests made under *any* of the three sections of FOIA—including the affirmative disclosure provisions—does not change this result, in stark contrast to the *ALDF* court's reasoning. *See ALDF* Mem. Op. at 10 (citing 5 U.S.C. § 552(6)(A), which requires agencies to respond to requests made under subsections (1), (2), or (3) "within 20 days"). As the Court of Appeals long ago made clear in *Irons v. Schuyler*, there may be a rare situation "when a request . . . is made in such general terms

---

[2] Because FOIA applies to all agencies, a court may not defer to any agency's statutory interpretation. Rather, courts must review such questions de novo. *Collins v. Nat'l Transp. Safety Bd.*, 351 F.3d 1246, 1252-53 (D.C. Cir. 2003).

as here, involving *a large and indefinite number of records which have accumulated over the entire history of this agency*," that may require a request for "identifiable" records that is not normally required. 465 F.2d at 614. However, as explained above, that is not the case here, where the agency knows precisely what records are at issue—i.e., those that it removed from the Electronic Reading Room after decades of providing such records to the public.

For all of these reasons, as well as those discussed in Plaintiffs' Opposition brief, the *ALDF* court's interpretation of FOIA's Electronic Reading Room provisions is deeply flawed, and therefore Defendants' reliance on the *ALDF* decision is misplaced.[3]

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in Plaintiffs' Opposition to Defendants' Motion to Dismiss, the motion should be denied.

Respectfully submitted,

__/s/_____
Katherine A. Meyer
D.C. Bar No. 244301
William N. Lawton
D.C. Bar No. 1046604
Meyer Glitzenstein & Eubanks, LLP
4115 Wisconsin Ave., N.W. Suite 210
Washington, D.C.  20016
(202) 588-5206 (O)
(202) 588-5049 (fax)
kmeyer@meyerglitz.com

Date:   July 3, 2017

---

[3] Moreover, although Plaintiffs maintain the *ALDF* court erred in finding it necessary to request access to specific information removed from the Reading Room before filing suit, in fact Plaintiffs' members did so. Over 100 members of Plaintiff Massachusetts Society for the Prevention of Cruelty to Animals submitted written notification to the agency between February 3, 2017, and the filing of this lawsuit complaining that this information had been removed and requesting that the agency place this information back in its Reading Room. *See* Ex. A (web form for easily contacting the agency). Similarly, Plaintiffs filed FOIA requests for information that had been withdrawn from the Reading Room.  *See* Winders Decl., ECF No. 19-2, ¶¶ 37–39.