UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL TREATMENT )
OF ANIMALS, INC., et al., )
 )
                    Plaintiffs, )
 )
v. )          Civ. No. 17-269 (CRC)
 )
UNITED STATES DEPARTMENT OF )
AGRICULTURE, et al. )
 )
                    Defendants. )
_____ )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' REPORT TO THE COURT

Pursuant to the Court's November 27, 2017 Order, Plaintiffs file this response to the

Report filed by Defendants concerning "the current posting status of the categories of records

sought by the plaintiffs." Docket Entry ("DE") 40.

## Introduction

Plaintiffs wish to reiterate that because Defendants take the position that they are not

required to affirmatively disclose *any* of the information at issue in this case but in the past

routinely disclosed such information only as a *discretionary* matter, there simply is no basis for

Defendants' argument that Plaintiffs' claims are not ripe for review on the merits. Indeed,

according to Defendants' position, the United States Department of Agriculture ("USDA") could

tomorrow, next week, or next year, again remove some or all of the limited  information it is has

reposted from its Electronic Reading Room, or simply stop posting such information again in the

future. *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pl. MTD Opp."), DE 19, at

33-34. Accordingly, Plaintiffs' claim that the agency is *required* to post such information is clearly ripe for review. *See id.* at 30-34.

Defendants' ripeness argument also fails because, as a matter of fact, Plaintiffs have since February 3, 2017 been deprived of the information they contend must be affirmatively disclosed by the USDA pursuant to the 1996 and 2016 Electronic FOIA Amendments ("E-FOIA Amendments), 5 U.S.C. §552(a)(2)(a). *See also Lawyer's Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, No. 17-1354, 2017 WL 3028832 at *6, __F. Supp.3d__ (D.D.C. July 18, 2017) (rejecting ripeness argument concerning plaintiffs' right of access to records under the Federal Advisory Committee Act because "Plaintiff contends that they are entitled to the disclosure of the materials *now*, not at some point in the future . . . ."); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 439 (D.C. Cir. 1986) ("we must assume the challenging party's view of the merits in determining ripeness")..

As further demonstrated by Defendants' recent Report and discussed further below, even if Defendants agreed, as they have in the past, *see* Pl. MTD Opp. at 16-21, that the USDA is *required* by FOIA to place this information in its Electronic Reading Room—as opposed to Defendants' current litigation position that the USDA has only done so as an exercise of *discretion*—Defendants have clearly made *final* decisions with respect to the posting of most of the information at issue in this case. For this additional reason, there simply is no basis whatsoever for Defendants' contention that this case is not ripe for review. Accordingly, the Court should deny Defendants' Motion to Dismiss and allow this case to proceed on the merits of Plaintiffs' claims that the USDA is operating in violation of the E-FOIA Amendments.

## A.    **Research facility annual reports**

The USDA's Report demonstrates that the agency has made a final decision regarding which annual reports and which information in those reports it has decided to repost. Yet much of the annual report information at issue in this case remains unavailable.

Although it is true that the USDA has reposted all previously posted research facility annual reports dated Fiscal Year 1999 through 2015, the agency has *failed to post a single annual report that it received since FY 2015*. Therefore, it has not posted any such reports for FY 2016, FY 2017, or FY 2018 (which began October 1, 2017). Such reports are crucial to Plaintiffs' ability to monitor whether facilities are complying with their obligations under the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131 et seq., and whether the USDA is carrying out is obligation to insure that animals used in research are provided "humane care and treatment" as required by the AWA. *See* 7 U.S.C. §2131; Complaint ¶ 1.[1]

In addition, for *all* of the 2015 reports and many of the other years' reports that have been reposted, the USDA has not posted the "Column E explanations"—i.e., information required from regulated facilities explaining why they have not complied with minimum animal welfare standards and/or why certain animals used in procedures involving pain and distress were not provided medication or other treatment to minimize their suffering. *See* 9 C.F.R. § 2.3(b)(3) (a "summary of all such exceptions must be attached to the facility's annual report . . . includ[ing] a

---

[1] *See also, e.g.,* USDA Office of Inspector General Report, "Animal and Plant Health Inspection Service Oversight of Research Facilities" (Dec. 2014) at 9, available at https://ww.usda.gov/oig/webdocs33601-000-41.pdf, (finding that USDA inspectors "are not verifying the accuracy of annual reports during their inspections"); *id.* at 28 (reporting that some regulated entities' Institutional Animal Care and Use Committees "did not recognize the importance of submitting an accurate annual report," and that "[a]s a result, animals are not always receiving basic humane care and treatment, and, in some cases, pain and distress are not minimized during and after experimental procedures").

brief explanation of the exceptions, as well as the species and number of animals affected"); *see also* Pl. MTD Opp., DE 19, at 5, 12; Declaration of Delcianna Winders ("Winders Decl."), DE 19-2, at ¶15. As Plaintiffs have explained, *id.*, this information is critical to ensuring that research facilities are providing animals with humane care and treatment as required by the AWA.

Because the agency has made final decisions regarding this category of records, there is no basis for its ripeness argument.

**B.      Inspection Reports**

Except for one category of information—animal inventories—the USDA has also made a final decision as to which information from the inspection reports it will now affirmatively disclose in its Electronic Reading Room, and which information it is withholding from the public. As made clear from its recent Report, as well as the USDA's August 2017 announcement about its reposting of such information, USDA Announcement (August 18, 2016), DE 36, the USDA decided to disclose inspection reports for the most recent three-year period, but is withholding from such reports categories of information that for many years it had routinely disclosed, including the names, addresses, and license numbers of all licensed entities that are individuals or businesses located at a home address.

This decision has significant implications for Plaintiffs' ability to use such records to monitor the USDA's compliance with its obligations under the AWA, as this deprives the public of information concerning which regulated entities are operating in violation of that statute, and thereby impairs the Plaintiffs' ability to determine whether the agency is doing anything to rectify these problems. *See* Complaint ¶ 1.[2]

---

[2] *See also, e.g.,* USDA, OIG Audit Report: APHIS Animal Care Program, Inspection and Enforcement Activities i-ii (Sept. 2005), *available at* http://www.usda.gov/oig/webdocs/33002-03-SF.pdf (the Eastern Region "is not aggressively pursuing enforcement actions against

Indeed, based on a review of inspection reports from August 1 to October 31, 2017, that have been posted by the agency, the inspection reports for which the agency is now deleting the names, addresses, and license numbers of regulated entities represent the majority of all such reports—approximately 66%.[3] Moreover, the agency's statement that "[i]nspection reports of universities, research institutions, and certain businesses contain the same types of limited privacy redactions that they had prior to February 3, 2017," Def. MTD at 2, is simply not correct. The USDA is now redacting much more information based on "personal privacy" than it has ever done before. *See, e.g.,* Attachment to Winders Decl., DE 19-2 (sample of a previously disclosed inspection report with minor redactions).

While Plaintiffs do not believe that all such information can continue to be withheld from the public—including, but not limited to, information that, because it was previously disclosed by the agency prior to February 3, 2017, cannot now be withheld under a FOIA exemption, *see Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)—they will address those issues when this case proceeds on the merits. At this juncture, it is clear that because Defendants have made final determinations about what to repost and what to redact, Plaintiffs' claims are ripe for review.

As to the animal inventories, which until February 3, 2017, the USDA for years also routinely disclosed with all inspection reports, the agency has now been withholding that

---

violators of the AWA"); USDA, OIG Audit Report: APHIS Animal Care Program, Inspections of Problematic Dealers 1-2 (2010), *available at* http://www.usda.gov/oig/webdocs/33002-4-SF.pdf (noting that the lack of appropriate enforcement "weakened the agency's ability to protect . . . animals," and the enforcement process was "ineffective in achieving [violator] compliance with AWA and regulations" because the agency took "little or no enforcement action against most violators").

[3] Of the 2,439 inspection reports, 1,608 (68%) have redactions of the names, addresses, and license numbers.

information from Plaintiffs for ten months. Accordingly, there also is no ripeness problem with respect to Plaintiffs' claims that such information—upon which Plaintiffs heavily rely in carrying out their animal protection missions, Winders Decl. ¶¶ 12, 27, 31—must be affirmatively disclosed. *See* Pl. MTD Opp. at 30-34; *Lawyer's Committee*, 2017 WL 3028832 at *6. .

### C.    Lists of Entities License Under the AWA

As made clear by the agency's recent Report, the USDA has also made a final decision about how it is posting the monthly list of current licensees. DE 40 at 3. Plaintiffs take issue with the form in which such disclosures are being made, particularly now that the agency is deleting from inspection reports the names, addresses, and license numbers of regulated entities. However, Plaintiffs will also address those matters when this case proceeds on the merits. At this stage, Defendants' final decisions about the process and format for reposting this information make clear that Plaintiffs' claims are ripe for review.

### D.    "Regulatory Correspondence" and Enforcement Records

As reflected in its recent Report, the USDA has also made final decisions concerning which "regulatory correspondence" and enforcement records it will, and will not, now affirmatively post. Although the agency states that administrative decisions and orders of the Administrative Law Judges are posted on the ALJ websites, DE 40 at 4, this represents only a very small percentage of the USDA's AWA enforcement decisions.[4] Therefore, the USDA is now withholding from the public the vast majority of these records which it previously routinely

---

[4] For example, in FY 2017, of 173 AWA enforcement actions taken, only *two* involved the ALJ process. *See* USDA, APHIS, Investigative and Enforcement Service, Animal Care Enforcement Summary (AWA and HPA), https://www.aphis.usda.gov/aphis/ourfocus/business-services/ies/ies_performance_metrics/ies-ac_enforcement_summary (last modified Nov. 9, 2017) (157 warnings, 13 settlement agreements, 1 non-monetary stipulation, and 2 administrative complaints).

posted in the Electronic Reading Room maintained by the agency's Animal and Plant Health Inspection Service ("APHIS").

Although Plaintiffs also contest the basis for these determinations, these issues are certainly ripe for review on the merits.

*    *    *

As a final matter, Defendants insist that Plaintiffs are in no way harmed by the USDA's decision to remove the information at issue from the agency's Electronic Reading Room because Plaintiffs can obtain some of this information simply by submitting regular FOIA requests for the information pursuant to 5 U.S.C. § 552(a)(3). Def. MTD at 18-19. However, although Plaintiffs and others submitted FOIA requests for this information ten months ago, they still have not received any of the requested information. *See. e.g.,* Winders Decl., DE 19-2, at ¶¶ 36-52.

This is not surprising. As a result of the agency's decision to remove large quantities of previously disclosed information from its Electronic Reading Room, the agency's backlog of FOIA requests has increased exponentially, *see* Winders' Decl. ¶ 29, completely undermining the entire purpose of the 1996 E-FOIA Amendments—to provide the public the opportunity to "more directly obtain and use Government information" which would "*result in fewer FOIA requests.*" H.R. Rep. No. 104-795 at 12-13 (1996) (emphasis added); *see also* Pl. MTD Opp., DE 19, at 28-29.

Respectfully submitted,

__/s/_____
Katherine A. Meyer
D.C. Bar No. 244301
William Nicholas Lawton
D.C. Bar No. 1046604
Meyer Glitzenstein & Eubanks, LLP
4115 Wisconsin Ave., N.W. Suite 210
Washington, D.C.  20016

(202) 588-5206 (O)
(202) 588-5049 (fax)
kmeyer@meyerglitz.com

Date:   December 11, 2017