# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. DEPARTMENT OF AGRICULTURE** *et al.*, <br><br> Defendants. | Case No. 17-cv-0269 (CRC) |

## **MEMORANDUM OPINION**

A few weeks into the Trump Administration, the Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS") removed a slew of documents from its website concerning its inspection and licensing of animal research facilities. Crying foul, a coalition of animal rights' groups filed suit under the "reading room" provision of the Freedom of Information Act, which requires federal agencies to maintain copies of frequently requested records for public inspection in electronic format. The Department of Agriculture has moved to dismiss on various grounds. Finding that APHIS's reposting of most of the documents has mooted Plaintiffs' claims as to those records, and that the complaint does not adequately allege that the remaining removed records are subject to FOIA's reading room provision, the Court will grant the Department's motion. Dismissal of the non-mooted claims will be without prejudice.

**I. Background**

    A. FOIA's Reading Room Provision

The Freedom of Information Act ("FOIA") places on federal agencies "both reactive and affirmative obligations to make information available to the public." Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice ("CREW"), 846 F.3d 1235, 1240 (D.C. Cir. 2017).

Under the more familiar—and more frequently-litigated—reactive provision, federal agencies must release records (with some exceptions) upon a valid and reasonably specific request by a member of the public. 5 U.S.C. § 552(a)(3)(A).

In addition to this reactive disclosure obligation, FOIA also imposes an affirmative duty on agencies to "make available for public inspection in electronic format" five specific classes of records. Id. § 552(a)(2). They are: (1) "final opinions, . . . as well as orders, made in the adjudications of cases"; (2) "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register"; (3) "administrative staff manuals and instructions to staff that affect a member of the public"; (4) "copies of all records, regardless of form or format, (i) that have been released to any person" pursuant to the reactive disclosure provision of FOIA and (ii) "that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records" or "that have been requested 3 or more times"; and (5) "a general index of the records" posted. Id. § 552(a)(2)(A)–(E). This provision is known as FOIA's reading room provision. See, e.g., CREW, 846 F.3d at 1238.

B. Factual and Procedural History[1]

The Animal and Plant Inspection Service ("APHIS") and the Department of Agriculture, of which APHIS is a component, are responsible for administering the Animal Welfare Act. Compl. ¶ 14. Congress passed the Animal Welfare Act in part to ensure that animals used in medical research are treated humanely. Id. ¶ 12. Under the Act, facilities that conduct medical

---

[1] The Court draws the relevant factual background from the Complaint, assuming the truth of all well-pled allegations therein as it must at this stage of litigation. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

research on animals must obtain a license from the Department; in order to do so, the facility must demonstrate that it is in compliance with the regulations issued by the Department concerning the humane treatment of animals. Id. ¶ 15.

Historically, APHIS and the Department have posted a variety of records related to this licensing process on APHIS's public website. Id. ¶¶ 21–22, 30. Specifically, APHIS posted reports from facility inspections, regulatory correspondence with licensed facilities, reports submitted by licensed facilities, and enforcement records that had not yet received final adjudication. Id. ¶ 30. These records were posted with some redactions of information exempt from disclosure under FOIA, such as that implicating personal privacy. Id. ¶ 21. That changed on February 3, 2017, when APHIS announced that it was removing the Animal Welfare Act records from its website in order to "remove certain personal information" from the documents. Id. ¶ 30 (citation omitted).

Shortly thereafter, People for the Ethical Treatment of Animals, Inc., Delcianna Winders, Physicians Committee for Responsible Medicine, Born Free USA, Massachusetts Society for the Prevention of Cruelty to Animals, and Beagle Freedom Project (collectively "PETA") filed suit against APHIS and the Department of Agriculture under FOIA. PETA alleged that the Department's wholesale removal of the records violated the reading room provision of FOIA. The complaint focused on four specific categories of records: (1) research facility annual reports, (2) inspection reports, (3) lists of entities licensed under the Animal Welfare Act, and (4) regulatory correspondence and enforcement records. Id. ¶¶ 1, 30. With respect to these removed records, PETA sought declaratory and injunctive relief requiring the Department to make available to PETA all removed records and to continue making the records publically available

in the future without requiring PETA to submit an individual FOIA request. Id. ¶¶ 36–37. PETA subsequently filed a motion seeking discovery.

The Department moved to dismiss. It maintained that PETA failed to state a claim upon which relief could be granted because the complaint did not adequately allege that the relevant records fell within the scope of FOIA's reading room provision. Mem. Supp. Defs.' Mot. Dismiss ("Defs.' MTD"), at 10. Additionally, the Department argued that dismissal was proper because PETA had not filed an affirmative FOIA request for the relevant records and therefore had failed to exhaust administrative remedies. Id. Finally, the Department contended that PETA's claim was not prudentially ripe for judicial review because the Department had not yet finished its review of the removed records—which could result in the records being reposted. Id.[2]

On September 11, 2017, after briefing on the motion to dismiss had finished, PETA filed a notice with the Court indicating that the Department had completed its review of the relevant records and, therefore, that the case was ripe. In response, the Court issued a Minute Order on November 27, 2017 directing the Department to file a report clarifying the "current posting status of the categories of records sought" by PETA. The Department filed the requested report on December 4, 2017. In it, the Department explained that: (1) it had reposted all previously posted research facility annual reports on the APHIS website, and intended to continue doing so consistent with its practice prior to February 3, 2017; (2) it had reposted all inspection reports for the most recent three-year period—consistent with its practice as of February 3, 2017— though it

---

[2] As part of the motion to dismiss briefing, PETA filed an unopposed motion for leave to file a surreply. The Court will grant that motion and has considered the surreply in ruling on the motion to dismiss.

had not reposted the animal inventories that accompanied those reports and some reposted reports contained more redactions than before; (3) it had reposted a monthly list of active licensees on its website (though not a "real time" list); and (4) while it had not reposted the regulatory correspondence and enforcement records, many of those records were official records of the Department's Office of Administrative Law Judges and Office of the Judicial Officer and remained available to the public on those offices' respective websites, and it did not intend to repost records involving possible violations that are unadjudicated (though it maintains a statistical summary of such records). Defs.' Report Submitted Resp. Court's Minute Order of Nov. 27, 2017, at 2–4.

**II.  Standard of Review**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). When analyzing such a motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). In addition, the Court must "accept the plaintiff's factual allegations as true and construe the complaint 'liberally,' 'grant[ing] plaintiff[] the benefit of all inferences that can be derived from the facts alleged.'" Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (alterations in original) (citation omitted).

**III.  Analysis**

In light of intervening events since the complaint was filed—namely, the Department's completion of its review of documents and reposting of most of the records that PETA has

requested—the Court will first address PETA's claims as to the reposted documents before moving to those documents that remain unavailable for public inspection. As to the documents that have been reposted, because PETA has been accorded the full relief requested in the complaint, the Court concludes PETA's claims as to those documents are now moot and should be dismissed. As for the remaining documents, the Court will dismiss PETA's claims without prejudice under Rule 12(b)(6) because the complaint does not adequately plead that the documents are reading room documents.

A. PETA's claims as to documents that have been reposted are moot.

Article III of the Constitution requires that a case remain live throughout the pendency of the action. Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016). Therefore, "[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." McBride v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of U.S., 264 F.3d 52, 55 (D.C. Cir. 2001). The requirement for a live case or controversy applies to each form of relief sought. Id.

Here, PETA seeks two specific forms of relief: a declaratory judgment that the removal of website records violated FOIA and injunctive relief ordering the removed records be made available to PETA by electronic means. Compl. Claim for Relief. While no party has argued that the reposting of documents has mooted either of PETA's claims for relief, the Court is "obliged to address the issue sua sponte because mootness goes to [its] jurisdiction." Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994).

The Court will start with PETA's request for injunctive relief. Based on the reports filed by the parties, it appears that for three of the four categories of records that PETA seeks, the Department has reposted the relevant records: the Department has reposted all previously-posted

6

inspection facility annual reports (with the exception of the animal inventories that accompany the reports), inspection reports, and the list of entities regulated under the Animal Welfare Act. See Defs.' Report Submitted Resp. Court's Minute Order of Nov. 27, 2017, at 2–4. Thus, the reposted records have been "ma[d]e . . . available to Plaintiffs by electronic means," Compl. Claim for Relief—the precise relief that PETA requested in its complaint.[3] In light of this fact, there is no further meaningful relief that the Court can grant as to PETA's request for injunctive relief. As such, that request is moot as to any reposted record.

This leaves PETA's declaratory relief request. The D.C. Circuit has recognized that when a plaintiff "merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful." City of Hous. v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1429 (D.C. Cir. 1994). PETA's complaint does not challenge any ongoing agency *policy* (at least with respect to any reposted records)—it has always challenged a discrete agency *action*, namely the removal of website records on February 3, 2017. See Compl. ¶ 36; id. Claim for Relief (seeking a declaration that "Defendants have violated FOIA by removing [the records] from APHIS's website"). Consequently, the mooting of PETA's injunctive relief request simultaneously moots its declaratory relief request.

That said, PETA's claims would not be moot if they met one of the two recognized exceptions for mootness: (1) capable of repetition yet evading review or (2) voluntary cessation. City of Hous., 24 F.3d at 1429. Of these two exceptions only the latter, voluntary cessation,

---

[3] While PETA may raise challenges to the redactions that now accompany these records, see, e.g, Pls.' Resp. Defs.' Report, at 5, PETA's complaint challenged the wholesale removal of the records and not any redactions. Indeed, PETA's complaint recognizes that the Department may redact information pursuant to FOIA's exemptions. See Compl. ¶ 34. As such, PETA's concerns about redactions are not part of the complaint as filed.

would arguably apply here. A defendant's voluntary cessation of challenged conduct will moot the case if "there is no reasonable expectation that the conduct will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Qassim v. Bush, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (citation omitted).

These requirements are met here. PETA's access to the records erases the effects of the alleged violation. Additionally, there is no reasonable expectation the Department will remove the records again: from the beginning, the Department has indicated—and both parties have recognized—that the removal was a temporary measure intended to review the records and remove certain personal information. See Compl. ¶ 30 ("[The Department] asserted that the reason for its decision was its desire to 'remove certain personal information from documents it posts on APHIS' website." (citation omitted). And the Department has indicated its intent to continue posting records going forward. See Defs.' Report Submitted Resp. Court's Minute Order of Nov. 27, 2017, at 2 ("APHIS intends to continue posting annual reports going forward consistent with its practice prior to February 3, 2017."); id. at 3 ("Since August 18, 2017, APHIS has posted approximately 1,859 newly generated inspection reports . . ."). Given the temporary, one-time nature of the Department's removal of the records, it is reasonably certain that the Department will not remove these records again. The voluntary cessation exception thus does not apply.

In sum, because PETA has been accorded the full relief it sought with respect to the reposted records, the Court concludes that PETA's claims with respect to these records are now moot.

B. PETA has insufficiently pled that the remaining removed documents are reading room documents.

As discussed above, three of the four categories of documents that PETA requested—annual facility reports, inspection reports (absent inventories), and the list of regulated entities—have been reposted and PETA's claims as to those documents are now moot. This leaves the Court to address only those documents that have not been reposted: the animal inventories (which the Department avers it is in the process of auditing and intends to repost) and regulatory compliance documents related to unadjudicated claims of violations of the Animal Welfare Act. See Compl ¶¶ 1, 30. As to these remaining documents, the Court agrees with the Department that PETA has not adequately pled that they fall within the scope of FOIA's reading-room provision.

Under the statute, the FOIA reading-room provision encompasses five categories of documents: (1) final opinions and orders rendered in the adjudication of cases, (2) statements of policy and interpretations which are not published in the Federal Register, (3) administrative staff manuals and instructions, (4) frequently requested documents, and (5) indices of posted records. 5 U.S.C. § 552(a)(2)(A)–(E). If a document does not fall within one of these categories, then the agency has no affirmative obligation to post the document—it would only have a reactive obligation to release the document pursuant to a valid FOIA request, see id. § 552(a)(3)(A). Consequently, a plaintiff raising a violation of FOIA's reading room provision must plausibly allege that the withheld records fall within one of these categories in order to properly state a claim. See Campaign for Accountability v. U.S. Dep't of Justice, 2017 WL 4480828, at ** 7, 12 (D.D.C. Oct. 6, 2017).

PETA argues that the records at issue here fall in the first or fourth category. As to the first category, PETA's complaint does not contain plausible allegations that the records at issue

9

represent final opinions made in the adjudication of cases. Indeed, the challenged regulatory compliance records specifically involved cases "that have not reached final adjudication." Compl. ¶ 30 (citation omitted). Such records, therefore, are not plausibly *final* opinions. Nor could "warnings, settlements, and stipulations" plausibly be final opinions, particularly since records must have "precedential value" or "constitute working law of the agency" to qualify as final opinions, see, e.g., Tereshchuk v. Bureau of Prisons, 67 F. Supp. 3d 441, 456 (D.D.C. 2014). Similarly, inventories of animals submitted with annual reports do not plausibly sound like final opinions, and no facts alleged in the complaint suggest such an interpretation. As such, PETA fails to adequately allege that these remaining records fall within the first category of records covered by the reading-room provision.

This leaves the fourth category, frequently requested records. According to FOIA, such records are those that (1) "have been released to any person" pursuant to a valid FOIA request and (2) that the agency has "determine[d] have become or are likely to become the subject of subsequent requests for substantially the same records" *or* that "have been requested 3 or more times." 5 U.S.C. § 552(a)(2)(D). As an initial matter, PETA nowhere alleges in its complaint that the animal inventories and regulatory compliance records have *ever* been released to any person pursuant to a valid FOIA request.[4] Thus, the records fail to meet the first requirement to

---

[4] PETA notes in affidavits attached to its opposition that some of the Plaintiffs have requested (though not necessarily yet received) these documents. But when ruling on a motion to dismiss under Rule 12(b)(6), the Court is confined to the allegations in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice. St. Francis Xavier, 117 F.3d at 624. The Court cannot rely on the declarations attached to PETA's opposition in ruling on the motion to dismiss. Nor has PETA ever moved to amend its complaint to include any factual allegations set out in the declarations. For similar reasons, the Court will deny PETA's outstanding motion for leave to file a supplemental declaration—that declaration, too, would be inappropriate for the Court to rely on at this juncture to supplement allegations in the complaint.

be frequently request records. Similarly, PETA nowhere alleges that the records have been requested more than three times or that the Department has determined the records have been or are likely to be the subject of multiple requests.

In opposition to the Department's motion to dismiss, PETA primarily argues that because the records were previously posted on APHIS's website, they *must* be records within the scope of the reading room provision. Pls.' Opp'n Defs.' Mot. Dismiss at 16. But that is not necessarily so. An agency could clearly decide to post a wider swath of records than obligated to under FOIA: for instance, an agency could preemptively post a record that has *never* been requested (and thus is not a frequently requested record under the statute) but that it anticipates will be requested repeatedly. The Court therefore does not agree that merely because a record has been posted on an agency's website, the agency was required to post that record under FOIA.[5]

In sum, PETA does not allege in its complaint that it has requested these documents pursuant to a valid FOIA request. And the record's prior-posted status is insufficient by itself to show it is a frequently-requested record. PETA has therefore failed to adequately allege that these records are reading room records and, accordingly, that the Department has improperly withheld records under FOIA.[6]

---

[5] This is equally true for future records, which by virtue of their currently non-existent status have never been released to any person under a valid FOIA request and therefore cannot yet be reading-room documents.

[6] Because the Court is dismissing for mootness and failure to state a claim upon which relief can be granted, it need not address the Department's arguments that dismissal is also proper because PETA failed to exhaust its administrative remedies or on prudential ripeness grounds.

IV. **Conclusion**

In light of the Department's reposting of the vast majority of the records at issue in this case, there is not much left for the Court to resolve. The Department's reposting of the records provides PETA with the injunctive relief it seeks, and therefore moots PETA's claim as to those records. With respect to the records that have not been reposted, PETA has not adequately alleged that they fall within the scope of FOIA's reading-room provision. The Court will therefore dismiss the case for mootness and for failure to state a claim on which relief can be granted. For the non-mooted claims, this dismissal is without prejudice. A separate Order shall accompany this Memorandum Opinion.[7]

CHRISTOPHER R. COOPER
United States District Judge

Date: January 18, 2018

---

[7] PETA has also filed a motion for discovery. Because the Court is granting the Department's motion to dismiss, it will deny PETA's pending motion as moot.